Moses Polakoff, Appellant, *v.* Edwin C. Hill and Others, Respondents.

First Department, May 2, 1941.

778

*Samuel Mezansky* of counsel [*Abraham Grenthal*, attorney], for the appellant.

*Dudley Dupignac*, for the respondents Edwin C. Hill and Columbia Broadcasting System, Inc.

*Irving I. Goldsmith* of counsel [*Harold B. Elgar* with him on the brief; *Jos. L. Roesch*, attorney], for the respondent American Tobacco Company.

CALLAHAN, J.   Plaintiff is an attorney at law who represented one Charles Luciano, a defendant in a criminal prosecution, the details of which prosecution, including the names of counsel for the defense, received very wide notice in the public press.

Defendant Hill, a radio commentator, several months after the Luciano case was finished, was conducting a news broadcast over the network of the defendant Columbia Broadcasting System, Inc., at the instance of the defendant American Tobacco Company. Hill was commenting on the career of Thomas E. Dewey, district attorney of New York county.   In describing Dewey's prosecution of the Luciano case, he stated at one point as follows: " Half the crooked lawyers in New York, most of the bail-bondsmen, all czars of racketeering, schemed and fought for his acquittal, but Thomas Dewey beat them down, and up the river went ' Lucky ' Luciano with all his wealth and dark power."

Later in the broadcast a further comment was made.   Plaintiff claimed in his complaint that it ran as follows: " No one who saw the consummation of justice in the Luciano case will ever forget the courtroom scene when Charles ' Lucky ' Luciano stood before his gray haired judge to receive such a verbal castigation as a man seldom gets in this life.   His vice empire had fallen around his ears.   His crooked lawyer mouthpieces had been silenced and so utterly discredited that even their paymasters sneered at them."

Defendants deny that the word " lawyer " was used in the second part of the broadcast, but admit the remainder of it.   In other words, defendants claim that Hill's broadcast used the words " crooked mouthpieces " and not " crooked lawyer mouthpieces."

It is conceded upon the trial that the broadcast was read from a script, and related to persons engaged in a profession. Accordingly, plaintiff proceeded upon the theory of libel rather than slander. (*Locke* v. *Benton & Bowles, Inc.*, 253 App. Div. 369; *Locke* v. *Gibbons*, Id. 887.) Although defendants on the trial contested the correctness of this position, that question is not presented on this appeal. We must presently assume that plaintiff's remedy was properly by an action in libel.

Plaintiff apparently prepared his complaint from what he contended was a copy of the script read by Hill. He was unable to produce proof to show that the actual broadcast followed this alleged script. None of the defendants could produce a copy of the script submitted or used by Hill.

A representative of the defendant Columbia Broadcasting System, Inc., testified that the actual broadcast was mechanically recorded on a wax cylinder, from which typewritten retranscriptions were made. Defendants produced a copy of the typewritten records. As so retranscribed, the word "lawyer" is not found at the point referred to in plaintiff's complaint. Plaintiff eventually was compelled to offer the typewritten record in evidence, and to adopt the wording thereof as the article published.

The main issue litigated upon the trial was whether the statements complained of were such that they would be understood to import a charge of and concerning the plaintiff. Hill contended that in referring to "crooked lawyers" in the first statement heretofore quoted, he was not referring to those who acted as counsel to the defense, and that the context shows this. He further says that likewise in mentioning "crooked mouthpieces" in the second part of the broadcast, he had not intended to refer to the lawyers who defended Luciano, but rather to Luciano's codefendants, who, he said, had been his "mouthpieces" in his criminal operations. It was, therefore, of great importance, at least as to the second phase of the article, to ascertain whether the broadcast had in fact included the word "lawyer." Plaintiff, in order to support the allegations of his complaint that the word "lawyer" had been included in the broadcast, and to refute Hill's contention that he referred to Luciano's codefendants, attempted to introduce in evidence the first answer served by defendant Hill to the complaint in this action. In that answer Hill had admitted that the broadcast was substantially as pleaded in the complaint. The complaint alleged the use of the expression "crooked lawyer mouthpieces." Hill had withdrawn this admission when he served an amended answer which substituted for his earlier admission a denial that the broadcast included "lawyer" before the word

" mouthpieces." The trial court excluded the earlier pleading, ruling that its contents were immaterial in view of the fact that a later pleading had been served.

We think that that ruling constituted reversible error. Upon the essential issue as to whether the libelous statements were published of and concerning the plaintiff, an admission made by the defendant to the effect that the word " lawyer " had been included in the matter broadcast, or that the publication was " substantially " of that nature, was an admission against interest, the force of which might seriously affect Hill's credibility. It would be for the jury to say whether a man would have conceded in pleading that he had used words substantially the same as " crooked lawyer mouthpieces," if in fact in the publication he intended to refer to Luciano's codefendants. Therefore, aside from the question of whether an admission made in an earlier pleading would have sufficient probative force to establish *prima facie* a fact put in issue by a later pleading, the fact that defendant Hill offered himself as a witness justified the receipt of this evidence to contradict the witness by his prior contrary declaration. This was so although the pleading had been amended or superseded. (*McNulty* v. *Zaganos*, 255 App. Div. 274.)

Appellant claims that further error was committed in that defendant Hill was permitted to testify that he did not intend to refer to the plaintiff in his broadcast. While this testimony concerning intent may have been competent on the question of actual malice, as will be pointed out hereafter, this distinction was not properly called to the jury's attention. A construction different from that which the words used bear in their common acceptance cannot be placed on them, where the words are of common usage and not of doubtful meaning. The question is not what the writer intended the words to mean, but what they would be understood to mean by the ordinary reader.

It was proper to permit Hill to testify that the word " lawyer " was omitted from the broadcast, in order to support his claim that the statement concerning Luciano's " mouthpieces " was such that it would be understood as referring to Luciano's codefendants rather than to his attorney, *i. e.*, that they were not said " of and concerning " the plaintiff. However, if the jury determined that the words would be understood as referring to Luciano's lawyers, and that listeners understood them to apply to plaintiff, plaintiff would have the right to just compensation, for the words in both statements were clearly libelous. Mere lack of actual intent to injure would be no defense, (*Moore* v. *Francis*, 121 N. Y. 199; *Holmes* v. *Jones*, 147 id. 59.) Malice implied in law is sufficient

to support the right to compensatory damages. Actual malice need only be shown to support a claim for punitive damages. The rule has been stated to be that in a case of an unjustified libelous publication the law implies malice and infers some damage. (*Byam* v. *Collins*, 111 N. Y. 143, 150.)

In *Corrigan* v. *Bobbs-Merrill Co.* (228 N. Y. 58, 63) it was said: " The fact that the publisher has no actual intention to defame a particular man or indeed to injure anyone, does not prevent recovery of compensatory damages by one who connects himself with the publication."

Therefore, aside from whether the receipt of the evidence of intent constituted error, we find that the trial court erred in refusing a request by plaintiff to charge the jury that in determining the amount of compensatory damages they might not consider the intentions of the defendant Hill or the fact that he did not have any malice towards the plaintiff. The entire defense of defendants was predicated upon the defendants' claim that the article was not published of and concerning the plaintiff. If so published and understood, considered as a writing, it was libelous *per se*, and plaintiff was entitled at least to compensatory damages. As was stated in *Corrigan* v. *Bobbs-Merrill Co.* (*supra*): " * * * the question of malice is never for the jury when compensatory damages alone are sought; the plaintiff recovers damages if he proves that the words apply to him and that his reputation has been injured, whether such injury is the result of defendant's evil disposition towards him or a mere concatenation of adventitious circumstances. * * * The distinction between the right to compensatory and punitive damages is clear. Actual injury to reputation must be paid for in all events."

The jury's verdict in favor of defendants was by a vote of ten to two. In rendering its verdict, the jury added a direction that Hill should clarify his remarks in a future broadcast by showing that his criticism did not refer to plaintiff. While this direction was, of course, surplusage, it and the other circumstances in this case indicate that the jury had not received adequate instructions as to their duties.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

MARTIN, P. J., GLENNON and COHN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.