WALTER O. BAUMAN, PLAINTIFF-APPELLANT, v. ROYAL INDEMNITY COMPANY, A CORPORATION OF THE STATE OF NEW YORK, DEFENDANT-RESPONDENT.

Argued September 14, 1961—Decided October 23, 1961.

14

*Mr. Sidney M. Schreiber* argued the cause for the appellant (*Messrs. Schreiber, Lancaster & Demos,* attorneys; *Mr. Robert E. Cowen,* on the brief).

*Mr. Robert Scherling* argued the cause for the respondent (*Messrs. Reid & Flaherty,* attorneys).

The opinion of the court was delivered by

JACOBS, J. The Appellate Division affirmed the trial court's judgment of dismissal which was entered at the close of the plaintiff's case. See *Bauman v. Royal Indem. Co., 66 N. J. Super.* 110 (1961). We granted certification on application pursuant to *R. R.* 1:10–2. 34 *N. J.* 474 (1961).

The plaintiff lives in West Orange, New Jersey and has lived there for many years. He testified that before he moved there he went to Frenkel & Co. in New York City and "requested from them every type of insurance that was necessary to cover myself on my house, any people that came and worked at the house, any fire or theft or anything else that might happen." During the period under consideration he purchased his policies in the defendant company "through Frenkel." These policies included "comprehensive personal liability policy" No. 428394 for the three-year period from April 1953 to April 1956 and its renewal policy No. 56–23–86 for the three-year period from April 1956 to April 1959. In 1957 Mrs. Cornelison, a part-time domestic employed by the plaintiff, suffered an accident while working at the plaintiff's home. The plaintiff notified Frenkel and subsequently received a letter from the defendant stating that there was a question regarding the policy coverage. At an informal hearing before the Division of Workmen's Compensation, Mrs. Cornelison received an initial award of $232 which was paid by the plaintiff after he received a check in that amount from Frenkel. Thereafter Mrs. Cornelison filed a formal complaint in the Division of Workmen's Compensation. The defendant declined to participate in this proceeding which was defended by the plaintiff through his

own attorney. Mrs. Cornelison received an award of $1,230.18 which was paid by the plaintiff along with fees in the sum of $200.

In 1958 the plaintiff filed a complaint in the Law Division against the defendant seeking recovery of the sum of $1,230.18 plus the costs incurred by him in defending against Mrs. Cornelison's claim for compensation. The answer of the defendant denied liability and referred specifically, in a separate defense, to paragraph (d) of the exclusions set forth in policy No. 56–23–86. In 1959 the plaintiff filed an amended complaint which added a count alleging that policy No. 56–23–86 was a renewal policy which contained certain language modifications in its exclusion clauses, and that none of the changes had been brought to the plaintiff's attention. The plaintiff demanded that the renewal policy covering the period from April 1956 to April 1959 be reformed to conform to the policy covering the period from April 1953 to April 1956. The matter came on for trial in the Law Division in 1960, and during the trial the plaintiff sought to introduce the defendant's answer under oath to an interrogatory which had requested that the defendant state the relationship of Frenkel & Company to the defendant in 1957. The answer stated that "Frenkel & Company was authorized agent of the defendant." The trial court refused to permit the plaintiff to introduce the answer upon its appearing that before the trial the defendant had filed an amended answer to the interrogatory which set forth that "Frenkel & Company, Inc. is not an agent of the defendant, but a general insurance broker."

At the close of the plaintiff's case the defendant moved for a judgment of dismissal on the ground that under the pertinent exclusion clause in policy No. 56–23–86, all workmen's compensation claims were excluded from the coverage of the policy. The plaintiff resisted the motion on the ground, *inter alia,* that the exclusion clause in policy No. 428394 was the controlling one and that an identical exclusion clause to that contained in policy No. 428394 had been

soundly construed in *Gunther v. Metropolitan Cas. Ins. Co.,* 33 *N. J. Super.* 101 (*Law Div.* 1954), as not excluding coverage of a workmen's compensation claim by a residence employee where the insured had no specific workmen's compensation policy. The plaintiff pointed out that when the company issued its renewal policy, no changes were called to his attention, and he urged that he was consequently entitled to the coverage afforded by policy No. 428394 rather than any lesser coverage afforded by the renewal policy. The trial court recognized that, if the terms of policy No. 428394 were controlling, the plaintiff's showing would, under the *Gunther* case, be sufficient to withstand the motion. It noted, however, that the language change in policy No. 56–23–86 was "to negative the effect of the decision of the *Gunther* case" and found the exclusion clause of the renewal policy, rather than the earlier policy, to be controlling. It expressed the view that Frenkel & Company was the plaintiff's insurance broker rather than the defendant's agent, and pointed out that the plaintiff had failed to introduce proof as to whether Frenkel & Company had been made aware of the change in the exclusion clause. In concluding its oral ruling granting the defendant's motion to dismiss, it expressed serious doubt that a "change made without notice to policyholders" would warrant reformation or comparable relief.

In affirming the trial court's dismissal, the Appellate Division recognized the force of the *Gunther* case if the terms of policy No. 428394 were deemed to be controlling. It pointed out that after *Gunther* was decided, the particular language upon which it relied was eliminated from later policies such as policy No. 56–23–86, and concluded that under the terms of that policy, workmen's compensation claims by domestic employees as well as other employees were excluded. It expressed the view that the trial court had properly declined to admit into evidence the original answer to the interrogatory with respect to the relationship of Frenkel & Company to the defendant and noted that no

other proof was offered to establish that Frenkel & Company was the defendant's agent rather than the plaintiff's broker. It rejected the plaintiff's contention that, absent notification from the company of the change in the terms of the renewal policy, he was entitled to the coverage of the earlier policy rather than any lesser coverage in the renewal policy. It pointed out that there was nothing in the record to indicate that Frenkel & Company was not aware of the change in the renewal policy, and stated that it was "not convinced that there was any duty upon the insurance company to give express warning to the broker or the insured of changes such as this." See *Bauman v. Royal Indem. Co., supra,* 66 *N. J. Super.,* at *p.* 115; but *cf. Maryland Casualty Company v. Kramel,* 80 *So. 2d* 897, 900 (*La. App.* 1955); *Schock v. Penn Tp. Mut. Fire Ins. Ass'n,* 148 *Pa. Super.* 77, 24 *A. 2d* 741, 743 (1942); *Mike Occhiato Mercantile Co. v. Allemannia Fire Ins. Co.,* 98 *F. Supp.* 888, 892 (*D. C. D. Colo.* 1951). See also *Lumbermen's Ins. Co. v. Heiner,* 74 *Ariz.* 152, 245 *P. 2d* 415, 418 (1952); *Coal Operators Casualty Co. v. F. S. Neely Co.,* 219 *Ark.* 579, 243 *S. W. 2d* 744, 746 (1951); *Crowell v. New Hampshire Fire Ins. Co.,* 147 *So.* 762, 766 (*La. App.* 1933); *Glaser v. Alexander,* 247 *Minn.* 130, 76 *N. W. 2d* 682, 687 (1956); *Hay v. Star Fire Insurance Company,* 77 *N. Y.* 235, 241, 33 *Am. Rep.* 607, 610 (1879); 13 *Appleman, Insurance Law and Practice* § 7653 (1943); 29 *Am. Jur. Insurance* § 363 (1960).

We are satisfied that the trial court erred in refusing to permit the plaintiff to introduce the defendant's sworn statement that Frenkel & Company was authorized agent of the defendant. It was a deliberate answer to an interrogatory submitted by the plaintiff and, when proffered by the plaintiff, was admissible in evidence as such. See *R. R.* 4:23–10; 4 *Moore's Federal Practice* § 33.29[1] (*2d ed.* 1950). It is true that the defendant amended its answer, well in advance of trial, to assert that Frenkel & Company was a general insurance broker and not agent of the defendant. Although the plaintiff does not question the defendant's

18

action in making the amendment (see *R. R.* 4:23–12; 2 *Schnitzer & Wildstein, New Jersey Rules Service, A IV*— 680; *Moore, supra*, § 33.25), or the effect of the amendment in eliminating whatever conclusive or limiting effect the original answer may have had (see *Moore, supra*, § 33.29[2]; *cf. Singer v. Superior Court of Contra Costa County*, 54 *Cal. 2d* 318, 5 *Cal. Rptr.* 697, 353 *P. 2d* 305, 309 (1960)), he properly points out that it does not eliminate the indisputable fact that the defendant, at one time, had stated under oath that Frenkel & Company was its authorized agent. That statement, as an admission by a party, was receivable as evidence against it to be weighed with all the other evidence by the trier of the facts. See *Grace & Co. v. City of Los Angeles*, 278 *F. 2d* 771, 776 (9 *Cir.* 1960); *McInerney v. William F. McDonald Const. Co.*, 35 *F. Supp.* 688, 689 (*D. C. E. D. N. Y.* 1940); *Standard Oil Co. of New York v. Boyle*, 231 *App. Div.* 101, 246 *N. Y. S.* 142, 145 (*App. Div.* 1930); *cf. Kimble v. Wilson*, 352 *Pa.* 275, 42 *A. 2d* 526, 530 (1945); *Morrissey v. Powell*, 304 *Mass.* 268, 23 *N. E. 2d* 411, 414, 124 *A. L. R.* 1522 (1939). In *Stoelting v. Hauck*, 32 *N. J.* 87 (1960), the court, speaking through Justice Proctor, had this to say:

"It is long out of doubt that an admission, or prior inconsistent statement, of a party may be used either to attack his credibility or as affirmative substantive proof against him. *Link v. Eastern Aircraft, Linden Division, General Motors Corp.*, 136 *N. J. L.* 540 (*E. & A.* 1948); *Corbett v. Van Kirk*, 38 *N. J. Super.* 478 (*App. Div.* 1956). Prior statements under oath in a court of law are no exception to the rule. See, *e. g.*, *Mitilenes v. Snead*, 45 *N. J. Super.* 246 (*App. Div.* 1957). The heightened reliability lent by the circumstances of their utterance should make them, if anything, more readily admissible than informal extra-judicial statements.

Factual assertions in prior or superseded pleadings of parties stand on the same footing on this score as their admissions. *Mahoney v. Nitroform Co., Inc.*, 20 *N. J.* 499 (1956); *New Amsterdam Casualty Co. v. Popovich*, 18 *N. J.* 218 (1955); *Lincks v. Erie R. Co.*, 97 *N. J. L.* 343 (*E. & A.* 1922); *Winn v. Wiggins*, 47 *N. J. Super.* 215 (*App. Div.* 1957). See 4 *Wigmore, Evidence*, §§ 1066–67 (3d ed. 1940)." 32 *N. J.*, at *pp.* 106–107

See also *Braceland v. Hughes,* 184 *Pa. Super.* 4, 133 *A. 2d* 286, 287 (1957); *Polakoff v. Hill,* 261 *App. Div.* 777, 27 *N. Y. S. 2d* 142, 145 (1941); *McCormick, Evidence* 508, 510 (1954); *cf. Giannone v. United States Steel Corporation,* 238 *F. 2d* 544, 547 (3 *Cir.* 1956); Annotation, 52 *A. L. R. 2d* 516 (1957).

As recently pointed out by Judge Goldmann in *Winn v. Wiggins,* 47 *N. J. Super.* 215, 222 (*App. Div.* 1957), the prevailing rule is that admissions in a pleading may be introduced as evidence against the pleader, even where they have been expressly withdrawn in a later amended pleading. That rule, which is applicable though the pleading is unverified, has greater applicability where, as here, the document containing the admission is a sworn answer to a formal interrogatory. The defendant suggests that its answer was not a statement of fact but was a legal conclusion and should therefore not be treated as an admission. In its setting, the statement appears to us to be clearly factual. However, whether it be viewed as entirely factual, or as an admixture of fact and conclusion, it was nonetheless a prior admission which was contrary to the defendant's present position, and was clearly receivable in evidence in support of the plaintiff's allegation that Frenkel & Company was an agent of the defendant. See *Cox v. Esso Shipping Company,* 247 *F. 2d* 629, 633–634 (5 *Cir.* 1957); 4 *Wigmore, Evidence* § 1053(c) (*3d ed.* 1940); *McCormick, supra,* at *p.* 507. In the light of all of the foregoing, the plaintiff was entitled to the benefit of the defendant's admission as part of his case, and on the motion to dismiss at the close of his case he was entitled to the benefit of all of the testimony which favored him and the favorable inferences which could reasonably be drawn therefrom. See *O'Donnell v. Asplundh Tree Expert Co.,* 13 *N. J.* 319, 328 (1953). Insofar as the agency issue was concerned, the defendant's admission itself was at that point legally sufficient. The defendant would, of course, have had ample opportunity on its own case to explain its admission and present competent evidence

in support of its present position that Frenkel & Company was a general insurance broker and not its agent. But, at the close of the entire case, the agency issue would have been a legal one for court rather than jury determination only if reasonable men could not, under the totality of the evidence, have differed as to the status of Frenkel & Company. See *Ferdinand v. Agricultural Ins. Co. of Watertown, N. Y.,* 22 *N. J.* 482, 493 (1956).

The defendant attacks the holding in *Gunther v. Metropolitan Cas. Ins. Co., supra,* but we find no merit in its attack. There Judge Gaulkin had occasion to deal, on motion for summary judgment, with a comprehensive personal liability insurance policy which contained a liability undertaking and an exclusion clause identical with those contained in policy No. 428394. The liability undertaking was to pay all sums which the insured became legally obligated to pay as damages because of bodily injury sustained by any person. The exclusion clause set forth under paragraph (d) that the policy did not apply to bodily injury of "(1) any employee of the insured while engaged in the employment of the insured, if benefits therefor are either payable or required to be provided under any workmen's compensation law; or (2) any residence employee of the insured while engaged in the employment of the insured, if the insured has in effect on the date of the occurrence a policy providing workmen's compensation benefits for such employee." The insured contended that although exclusion (d)(1) standing by itself would have eliminated coverage of workmen's compensation awarded to "any employee," the insertion of exclusion (d)(2) to cover residence employees specially must be held to mean that the special class of residence employees was taken out of the general class "any employee," and that consequently, although workmen's compensation claims generally were not covered by the policy, workmen's compensation claims of residence employees were covered if the policyholder had no specific workmen's com-

pensation policy on the date of the residence employee's injury. See 33 *N. J. Super.*, at *pp.* 104–105.

In a well-reasoned opinion, Judge Gaulkin reached the conclusion that, upon the language of the policy, and absent any evidence of special dealings between the parties which would indicate the contrary, the insured was entitled to prevail upon the reasonable construction advanced by him. We agree with Judge Gaulkin's determination and his supporting views which need not be repeated here in detail. See 33 *N. J. Super.*, at *pp.* 109–114. In *Gunther,* as here, the insurance company designated its insurance policy as a comprehensive personal liability policy and sold it to the policyholder as such. The designation was a very broad one and while the company had the undoubted right to exclude particular types of personal liability from the so-called comprehensive coverage, its responsibility was to do so unequivocally. *Cf. Mohawk Valley Fuel Co. v. Home Indemnity Company,* 8 *Misc.* 2d 445, 165 *N. Y. S.* 2d 357, 363 (*Sup. Ct.* 1957). In all fairness to the ordinary layman who is the average insured, an exclusion clause should be so prominently placed and so clearly phrased that "he who runs can read." See Lord St. Leonard in *Anderson v. Fitzgerald,* 4 *H. L. C.* 484, 510, 10 *Eng. Rep.* 551, 561 (1853). In recent years our courts, stressing the need for clarity and forthrightness in insurance policies (*Elcar Mobile Homes, Inc. v. D. K. Baxter, Inc.,* 66 *N. J. Super.* 478 (*App. Div.* 1961)), have repeatedly adopted liberal constructions of policy provisions which were obscure, ambiguous or uncertain. See *Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur,* 35 *N. J.* 1, 7 (1961); *Kievit v. Loyal Protect. Life Ins. Co.,* 34 *N. J.* 475, 482 (1961); *Hunt v. Hospital Service Plan of N. J.,* 33 *N. J.* 98, 102 (1960). In the *Hunt* case, Justice Francis expressed the pertinent principles of judicial construction which we now reiterate:

"The quest for the significance of language employed in an insurance contract is always engaged in with certain basic tenets in mind. Wherever possible the phraseology must be liberally construed in

favor of the insured; if doubtful, uncertain, or ambiguous, or reasonably suspectible of two interpretations, the construction conferring coverage is to be adopted. And exclusionary clauses of doubtful import are strictly construed against the insurer. *Boswell v. Travelers Indemnity Co.*, 38 *N. J. Super.* 599, 605 (*App. Div.* 1956); *Schneider v. New Amsterdam Cas. Co.*, 22 *N. J. Super.* 238 (*App. Div.* 1952)." 33 *N. J.*, at *pp.* 102–103

In the interpretation of a contractual instrument, the specific is customarily permitted to control the general and this ordinarily serves as a sensible aid in carrying out its intendment. See 3 *Williston, Contracts* § 619, at *p.* 1784 (*Rev. ed.* 1936); 3 *Corbin, Contracts* § 547, at *p.* 176 (1960); *cf. J. E. Faltin Motor Transp., Inc. v. Eazor Express, Inc.*, 273 *F.* 2d 444, 445 (3 *Cir.* 1960). It may be inferred from Mr. Bauman's testimony that he had received the comprehensive personal liability policy No. 428394 in regular course and had understood that it covered him, *inter alia,* in the event his residence employee was injured in the course of her employment at his home. From the particular and specific language in exclusion clause (d)(2), he would reasonably entertain the view that since he had no specific workmen's compensation policy he was covered in the event of a compensation claim by his residence employee; and he would be justified in adhering to that view notwithstanding the general language in (d)(1) which contained no particular or specific reference to residence employees. This was in effect the holding of *Gunther,* absent any special dealings between the parties indicating the contrary; in the instant matter the record at the close of the plaintiff's case contained nothing to suggest any such dealings.

After *Gunther* was decided, and apparently in response thereto, the defendant changed the language in exclusion clause (d) to eliminate any particular or specific reference to residence employees. See 66 *N. J. Super.,* at *p.* 112. Thus its renewal policy No. 56–23–86, issued to the plaintiff for the three-year period from April 1956 to April 1959, contained exclusion clause (d) which had been altered to

provide that the policy shall not apply "to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or if the insured has in effect on the date of the occurrence a policy providing workmen's compensation benefits for such employee." We assume that if the insurance company called the attention of the insured to the alteration in the renewal policy and the company's purpose not to cover workmen's compensation claims by residence employees as well as other employees, it would be absolved from responsibility here. However, the plaintiff claims that the alteration and such purpose were never brought to his attention, and that he was unaware of them until after his domestic employee had suffered her injury and asserted her claim. He contends that under the circumstances he is justly entitled to the coverage afforded to him by policy No. 428394 rather than any lesser coverage afforded by renewal policy No. 56–23–86.

There are many cases which hold that where an insurance company purports to issue a policy as a renewal policy without fairly calling the insured's attention to a reduction in the policy coverage, it remains bound by any greater coverage afforded in the earlier policy. Thus in *Maryland Casualty Company v. Kramel, supra,* the insurance company issued a one-year Manufacturer's Liability Policy in 1949. In 1950 it issued a renewal policy and during the term thereof an accident occurred which gave rise to various claims. After the accident the insured learned that a $50 deductible per claim clause had been inserted in the renewal policy though no such clause appeared in the original policy. In holding that the $50 deductible clause was not to be given effect and that the renewal policy was to be reformed accordingly, the Court of Appeal of Louisiana quoted with approval the following from 44 *C. J. S. Insurance* § 285, *at p.* 1133:

24

" 'Thus, if insured was not notified of a change in the renewal policy he will not be bound by such change; and it is immaterial that he did not examine the renewal policy until after the event insured against had occurred. In the absence of any agreement for an alteration of the original terms, a renewal contract containing alterations may be reformed.' " 80 *So.* 2d, at *pp.* 900–901.

In *Schock v. Penn Tp. Mut. Fire Ins. Ass'n, supra,* the insurance company issued a policy of insurance and later issued a renewal policy. The renewal policy contained a coinsurance clause which was not in the original policy. The insured testified that this change was not brought to his attention and that he did not examine the renewal policy until after the loss insured against had occurred. The Superior Court of Pennsylvania held that if the testimony of the insured was believed he was entitled to recover under the terms of the policy without the coinsurance clause. In the course of his opinion for the court, Judge Rhodes pointed out that the delivery of a policy as a renewal, "in the absence of notice or explanation that the terms of the policy had been altered," contemplates the same terms and conditions as the existing insurance. 24 *A.* 2d, at *p.* 743. In *Lumbermen's Ins. Co. v. Heiner, supra,* the insurance company, in issuing a renewal automobile insurance policy, omitted a comprehensive coverage clause which was contained in the earlier policy and the insured did not see the renewal policy until after the loss had occurred. The court held that it was the duty of the insurance company "to advise the insured of the deletion of the comprehensive coverage clause from the renewal contract of insurance," and that in the absence of such advice the insured was entitled to assume that the coverage provisions of his renewal policy were identical with those in his earlier policy. 245 *P.* 2d, at *p.* 418. In *Mike Occhiato Mercantile Co. v. Allemannia Fire Ins. Co., supra,* the insurance company had included a reporting requirement in a renewal policy though it was not contained in the earlier policy. The insured was unaware of the change until after the loss had occurred. The court rejected the insurance

company's effort to assert a violation of the reporting require-
ment, and noted that its defense "may not be interposed here
for when there is a renewal of a fire insurance policy, the
insurer must call attention to any change in the terms and,
if it does not, the change cannot be a part of the contract,
and the renewal is subject to reformation." 98 *F. Supp.*,
at *p.* 892. Many other decisions to like effect may readily
be cited. See *Hay v. Star Fire Insurance Company, supra;
Crowell v. New Hampshire Fire Ins. Co., supra; Glaser v.
Alexander, supra; Coal Operators Casualty Co. v. F. S.
Neely Co., supra;* see also, 13 *Appleman, supra* § 7653;
29 *Am. Jur., Insurance* § 363; *cf. Pearl Assur. Co. v. School
Dist. No. 1,* 212 *F. 2d* 778, 782 (10 *Cir.* 1954); *Massa-
chusetts Bonding & Ins. Co. v. R. E. Parsons Elec. Co.,* 61
*F. 2d* 264, 268, 92 *A. L. R.* 218 (8 *Cir.* 1932); *Ouachita
Parish Police Jury v. Northern Ins. Co.,* 176 *So.* 639, 640
(*La. App.* 1937); *Rice v. Provident Life & Accident Ins.
Co.,* 231 *Mo. App.* 560, 102 *S. W. 2d* 147, 151 (1937);
*Cochran Cotton-Seed Oil Co. v. Phenix Ins. Co.,* 7 *Misc.* 695,
28 *N. Y. Supp.* 45, 47 (*C. P.* 1894).

███ We fully subscribe to the aforecited decisions and
to the elemental principle of business morality and decency
which they embody. When an insured purchases an original
policy of insurance he may be expected to read it and the
law may fairly impose upon him such restrictions, conditions
and limitations as the average insured would ascertain from
such reading. However, where the stated period of coverage
in the original policy is about to expire and the insurance
company simply sends a renewal policy for the new period
of coverage, the insured, in all likelihood, will not read it
over again and may not fairly be expected to do so. Absent
notification that there have been changes in the restrictions,
conditions or limitations of the policy, the insured is justly
entitled to assume that they remain the same and that his
coverage has not in anywise been lessened. After the *Gunther*
case was decided, the defendant knew that (apart from
instances where there were special dealings to the contrary)

26

its New Jersey insureds who did not carry specific workmen's compensation policies were covered by their comprehensive personal liability policies against workmen's compensation claims by residence employees. It had the undoubted right, by appropriate alteration in the terms of its policies, to exclude such coverage in later renewals but, in such event, common fairness as well as legal duty dictated that it call the lessened coverage to the attention of the insureds so that they might suitably protect themselves. This it might readily have done in simple fashion; for example, it might have attached to the renewal policies or forwarded with them, slip notices to the effect that there had been language alterations and that the renewal policies were not intended to provide any coverage whatever against workmen's compensation claims by residence employees or by any other employees.

We have concluded that the judgment entered in the Appellate Division should be reversed and the cause remanded to the Law Division for a new trial in conformity with the views expressed by us on the issues dealt with earlier in this opinion. We find no present occasion for dealing with other issues which, although suggested by the lower courts and the briefs before us, may not have any vitality or present any difficulty at the new trial.

Reversed and remanded.

*For reversal and remandment*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance*—None.