Robert N. TAYLOR and Marion P. Taylor, Plaintiffs,

v.

OMAHA PROPERTY AND CASUALTY INSURANCE COMPANY, Defendant.

Civ. A. No. 89–649–N.

United States District Court, E.D. Virginia, Norfolk Division.

June 21, 1990.

---

H. Thomas Padrick, Jr., William B. Harvey, Anderson, Lee & Norris, Virginia Beach, Va., for plaintiffs.

George H. Heilig, Jr., Heilig, McKenry, Fraim and Lollar, Norfolk, Va., for defendant.

## MEMORANDUM

WALTER E. HOFFMAN, Senior District Judge.

The parties in this action stipulated, in the Final Pretrial Order entered April 6, 1990, to all of the facts relied upon in reaching a decision on this case. These stipulations are recited below.

### FACTS

1. The Plaintiffs, Robert N. Taylor and Marion P. Taylor are husband and wife, who own real property located at 908 Cavalier Drive, Virginia Beach, Virginia, as tenants by the entireties with the right of survivorship.

2. The Defendant Omaha Property and Casualty Insurance Company, ("Omaha"), is a Delaware corporation authorized to transact business in Virginia. Omaha offers the standard flood insurance policy ("SFIP") coverage in return for a premium, pursuant to the National Flood Insurance Program ("NFIP") of 1968. The NFIP is administered by the Federal Emergency Management Agency ("FEMA").

3. The Plaintiffs have had flood insurance coverage since on or about April 5, 1984 to the present. The Plaintiffs' flood insurance coverage has always been administered by the Defendant, and the insurance policies have been issued by the Defendant.

4. The Plaintiffs have paid the Defendant in full for all flood insurance premiums on said insurance coverage since on or about April 5, 1984 to the present.

5. The Plaintiffs have made three insurance claims since 1984 on their flood insurance policy to the Defendant due to a continuous flooding problem which occurs in and around Broad Bay of Virginia Beach which the Plaintiffs' property abuts, and which has flooded the Plaintiffs' property.

6. The Defendant has paid all three claims which were in the nature of flood damage to the interior of the Plaintiff's house.

7. As a result of these continuing flood problems, the Taylors proceeded to make reasonable repairs/alterations of a permanent nature to protect the Plaintiff's property from further damage, commencing in June of 1988.

8. The Plaintiffs raised the framework of the house up four feet from its previous elevation. The total expenses for such elevation was $49,156.63, which included the value of the Plaintiffs' own labor at the prevailing federal minimum wage rates.

9. On or about May 24, 1989, the Plaintiffs submitted to the Defendant's authorized agent, Insurance Center, Inc., a claim on the Plaintiffs' flood insurance policy for $49,156.63, and the Defendant denied the claim. However, the $49,156.63 is a reasonable amount for the repairs and/or alterations carried out by the Plaintiffs.

10. The action filed herein was within one year after the date of the mailing of the notice of disallowance, as is required by 42 U.S.C. § 4053 and pursuant to the terms of the flood insurance policy.

11. This Court has proper jurisdiction of the parties, and the parties have been properly identified and served.

12. The parties stipulated that the Plaintiffs did not receive any actual notice, including, but not limited to, new policies, endorsements, or the like reflecting that their flood insurance policy had been amended or at variance with Exhibit J–1, except premium notice bills.

No testimony was taken in this case nor other evidence presented. Two versions of the Standard Flood Insurance Policy were introduced as joint exhibits at argument of this case on May 2, 1990.

The parties further stipulated in open court that if the insurance contract desig-

nated Exhibit J–1 is controlling, the repairs made by the Plaintiffs would be covered, and the Plaintiffs would be entitled to recover the amount stipulated. If the insurance contract designated Exhibit J–2 is applicable, however, the repairs would not be covered under that contract, and the Plaintiffs would take nothing.

No stipulation or evidence shows any attempt by the Defendant to notify the Plaintiffs that the SFIP had been administratively amended during the term of their coverage or that coverage under renewal policies was any different than the original policy that the Plaintiffs received. The Defendant contends that publication of the amendments to the SFIP in the Federal Register, at 51 Fed.Reg. 30,290 (Aug. 25, 1986), is constructive notice to the Plaintiffs of the changes in coverage.

## DISCUSSION

This Court is not called upon to interpret the relevant contracts but only to determine which contract represents the agreement between these parties for flood insurance coverage.

■ This Court is not persuaded that *Federal Crop Ins. Corp. v. Merrill Bros.*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), controls the notice requirements in this case. While those who deal with the government are expected to know the law, *id.* at 384, 68 S.Ct. at 3, the appearance of flood insurance coverage changes in the Federal Register does not give legal notice of their contents to these plaintiffs.

This case is distinguishable from *Federal Crop* in that the Taylors' contract is with a private insurance company. No agency of the federal government is a party to the contract or to this action. Merrill Bros., on the other hand, had contracted for crop insurance with the wholly government-owned corporation created by the Federal Crop Insurance Act. That entity accepted applications for crop insurance subject to the terms of its regulations.

The same distinction can be made between this case and *Riverside Bldg. Supply Inc. v. Federal Emergency Management Agency*, 723 F.2d 1159 (4th Cir.1983), in which the plaintiff's policy of flood insurance was issued directly by FEMA. FEMA was, therefore, a party to the insurance contract.

*Zumbrun v. United Services Auto Ass'n*, 719 F.Supp. 890 (E.D.Cal.1989) is also inapposite. The Defendants cite *Zumbrun* for the proposition that "policies insured by FEMA, are interpreted under a uniform federal common law standard." *Id.* at 897. Therefore, an anomaly would be created if provisions of flood insurance policies issued by private insurance companies were interpreted differently from those issued directly by FEMA. That fact is not disputed. As this case does not involve interpretation of the flood insurance policy, however, *Zumbrun* is not helpful. This Court's only task is to determine *which* policy applies.

The federal common law which applies under both versions of the SFIP, as confirmed by court decisions in most circuits, includes general insurance law principles. The SFIP is legally treated as an insurance policy and as such, is a contract governed by basic contract rules. *See Sodowski v. National Flood Ins. Program*, 834 F.2d 653, 655 (7th Cir.1987), *cert. denied*, 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 619 (1988); *Brazil v. Giuffrida*, 763 F.2d 1072, 1074–75 (9th Cir.1985); *United States v. Parish of St. Bernard*, 756 F.2d 1116, 1121 (6th Cir.1985), *cert. denied*, 474 U.S. 1070, 106 S.Ct. 830, 88 L.Ed.2d 801 (1986); *Atlas Pallet, Inc. v. Gallagher*, 725 F.2d 131, 135 (1st Cir.1984); *Hanover Bldg. Materials v. Guiffrida* (sic), 748 F.2d 1011, 1013 (5th Cir.1984); *Drewett v. Aetna Casualty & Sur. Co.*, 539 F.2d 496, 498 (5th Cir.1976).

In this circuit, the Court of Appeals has acknowledged a duty "upon an agent, when renewing expiring policies, to inform the insured of basic change in the protection provided." It held, however, that "there is no requirement that he point out every formal change and linguistic revision." *Carva Food Corp. v. Equitable Fire and Marine Ins. Co.*, 261 F.2d 254, 259 (4th Cir.1958). In *Carva Food*, the Fourth Circuit affirmed this Court's judg-

ment for the insurance company, holding that a change in phraseology does not necessarily constitute a change in the true intention of both of the parties. *Id.* The change in that renewal policy was "a linguistic revision by which [the insurance company] re-expressed its unchanging intention." *Id.* The case at bar is distinguishable in that the amendment to Article VIII, Section H made a substantive change in coverage. This conclusion is supported by the parties' stipulation that the Plaintiffs' claim is recoverable under Exhibit J-1, but not under Exhibit J-2.

"Where an insurance company purports to issue a policy as a renewal policy without fairly calling the insured's attention to a reduction in the policy coverage, it remains bound by any greater coverage in the earlier policy." *Bauman v. Royal Indemnity Co.*, 36 N.J. 12, 23, 174 A.2d 585, 590 (1961). In support of this proposition, the Supreme Court of New Jersey cites decisional law from state courts in Arkansas, Arizona, Louisiana, Minnesota, Missouri, New York, and Pennsylvania, as well as the District Court of Colorado, and the Courts of Appeal for the Eighth and Tenth Circuits. *Id.* 174 A.2d at 590–91.

The New Jersey court held that "[a]bsent notification that there have been changes in the restrictions, conditions or limitations of the policy, the insured is justly entitled to assume that they remain the same and that his coverage has not in anywise been lessened." *Id.* 174 A.2d at 592. It recognized the insurance company's

> undoubted right, by appropriate alteration in the terms of its policies, to exclude ... coverage in later renewals but, in such event, common fairness as well as legal duty dictated that it call the lessened coverage to the attention of the insured so that they might suitably protect themselves. This might readily have been done in simple fashion; for example, it might have attached to the renewal policies or forwarded with them, slip notices to the effect that there had been language alterations and that the renew-

al policies were not intended to provide [the same coverage]....

*Id.*

The Court of Appeals for the Tenth Circuit has held similarly:

> While the renewal of an insurance policy constitutes a separate contract to be governed by general contract principles, *it is the general rule* that an insurance company is bound by the greater coverage in an earlier policy where the renewal contract is issued without calling to the insured's attention a reduction in policy coverage. This policy was set forth, but in different terms [in an earlier opinion by the same court] ... "When a renewal policy is issued, it is presumed, unless a contrary intention appears, that the parties intended to adopt in the renewal policy, the terms, conditions and coverage of the expiring policy."

*Government Employees Ins. Co. v. United States*, 400 F.2d 172, 175 (10th Cir.1968) (emphasis added), quoting *Pearl Assurance Co. v. School Dist. No. 1*, 212 F.2d 778, 782 (10th Cir.1954).

In *Government Employees*, the Tenth Circuit held that the requirement to call an insured's attention to a change in coverage was not met by transmitting a new policy contract and instructing the insured to carefully read the contract. *Id.* It was, however, satisfied by the inclusion of a "short, separately attached boldly worded modification." *Id.*

The parties have stipulated that the Taylors never received copies of renewal policies or endorsements. Omaha presented no evidence that these were sent. Indeed, the evidence in this case is void of any attempt by Omaha to call the Taylors' attention to the change in coverage under the amended renewal policy (Exhibit J-2).

Omaha, at one time, seemingly recognized an obligation to notify policyholders of changes in coverage, as evidenced by the Notice at the conclusion of the original policy issued to the Taylors (Exhibit J-1). It reads: "**NOTICE:** The terms of the Standard Flood Insurance Policy were amended effective October 1, 1983. Since the new policy represents the coverage pro-

vided to you under the National Flood Insurance Act, the following coverage limitations and policy provisions are being brought to your attention." The Taylors reasonably could expect similar notification of subsequent changes in renewal policies, such as those made by the August 1986 amendments which became effective January 1, 1987.

Also, FEMA's intention that notice of changes in coverage be given to flood insurance policyholders is evidenced by the same publication on which the Defendant relies. During the period allowed for comments to the proposed administrative changes in 1986, a private insurance company participating in the write-your-own program of the NFIP suggested handling the amendments to the SFIP in a way that would avoid the need for printing new policy forms to reflect the changes. FEMA stated that, despite the expense and complications of doing so, printing new policy forms was "the best way to proceed to assure that policyholders receive notice of the changes to their flood insurance coverage." 51 Fed.Reg. 30,300 (1986). For the express purpose of allowing time for new policy forms to be printed, FEMA delayed until January 1, 1987 the effective date of SFIP changes that restricted coverage. *Id.* This entire discussion and FEMA's resulting concession evinces FEMA's intention that policyholders not have their flood insurance coverage diminished without notice.

All of this leads to the inescapable conclusion that because Omaha failed to bring the change in coverage to the attention of the Taylors in any way, the greater coverage of the prior policy applies. The Taylors, therefore, are entitled to reimbursement for the repairs and alterations that they made in reliance on the flood insurance policy to which they originally subscribed. As stipulated by the parties, because the earlier policy (Exhibit J–1) applies, the Plaintiffs will recover the total expense of elevating the framework of their house, $49,156.63.

Plaintiffs are also entitled, as a matter of federal law, to prejudgment interest

on this award. *West v. Harris,* 573 F.2d 873, 882 (5th Cir.1978). "Fair compensation to the plaintiff for his loss covered by the insurance policy issued by the defendant can only be achieved by including the award of prejudgment interest as a mandatory element of damages." *Id.* at 883.

The interest is to be calculated from the time the Plaintiffs should have received reimbursement for their expenses under the coverage of their policy. *Id.* The applicable policy provided that losses were payable within 60 days after the insureds file their proof of loss. Exhibit J–1 at Article VIII, Section K. The Plaintiffs filed their proof of loss on May 24, 1989. The Defendant denied the Plaintiffs' claim on June 14, 1989. The prejudgment interest, therefore, will be calculated from June 14, 1989, the date of denial.

"As a matter of convenience and practicality, the amount of interest should be determined at the rate allowed by the law of the forum state." *Id.* at 884. The annual rate of interest for prejudgment interest is set by Virginia statute at eight percent (8%). Va.Code Ann. § 6.1–330.54 (1988). Interest, therefore, shall be computed on the sum awarded at an annual rate of eight percent (8%) from June 14, 1989 through June 21, 1990, the date of judgment, and thereafter at the legal rate, according to federal law.

Because FEMA is not a party to this contract or in this action, the Court does not discuss any issues between FEMA and Omaha, who apparently *have* contracted together. Policy coverage, contract construction, and eligibility for reimbursement of claims paid under this order have not been treated.

## CONCLUSION

For the reasons stated, judgment is entered in favor of the Plaintiff against the Defendant in the amount of Forty–Nine Thousand, One Hundred Fifty–Six Dollars and Sixty–Three Cents ($49,156.63), plus interest and costs.