**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0492-15T1

VINCE A. SICARI, ESQ.,
ATTORNEY AT LAW, LLC,

    Plaintiff-Appellant,

v.

THE HARTFORD INSURANCE
COMPANY OF THE MIDWEST,

    Defendant-Respondent,

and

SUBURBAN GENERAL INSURANCE
AGENCY,

    Defendant.

_____

Submitted November 28, 2016 — Decided  May 10, 2017

Before Judges Sabatino and Nugent.

On appeal from Superior Court of New Jersey,
Chancery Division, Bergen County, Docket No.
C-00243-14.

Vince A. Sicari, appellant pro se.

Mound Cotton Wollan & Greengrass, LLP,
attorneys for respondent (Frank J. DeAngelis,
on the brief).

PER CURIAM

Plaintiff Vince A. Sicari, Esq., Attorney at Law, LLC, appeals from September 21, 2015 Law Division orders granting defendant The Harford Insurance Company of the Midwest's (Hartford's) summary judgment motion and denying his own motion for summary judgment. For the reasons that follow, we affirm.

We derive the following facts from the motion record, viewed most favorably to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Plaintiff is an attorney who operates his own law practice. Hartford issued plaintiff an insurance policy effective July 31, 2010 through July 31, 2011 (the 2010 policy), which included coverage for commercial general liability, business personal property liability, and lawyers' professional liability. Plaintiff paid a premium of $2728 for the 2010 policy.

On May 31, 2011, two months before the 2010 policy expired, Hartford mailed plaintiff a letter advising there would be a "[r]eduction in [c]overage" regarding "[l]awyer's [p]rofessional [l]iability." Attached to the letter was a notice stating Hartford was "no longer writing [l]awyer's [p]rofessional [l]iability coverage as an endorsement to its . . . policy."

Plaintiff testified at his deposition that he never received the May 31, 2011 letter and was unaware it existed until he

A-0492-15T1

received a copy in discovery. However, plaintiff admitted the letter was addressed to his office. In addition, plaintiff's routine practice upon receiving an insurance policy was to review it and then call the insurance broker to ask whether he needed to take any additional action "in furtherance of [the policy.]"

On June 21, 2011, plaintiff signed a renewal application for lawyers' professional liability insurance coverage and submitted the application to the insurance broker. On July 13, 2011, the broker e-mailed the application to Hartford and requested Hartford to review the application and contact the broker with any questions. Hartford received plaintiff's application, but never notified the broker whether it contained any deficiencies or that it "was not going to be processed[.]" According to the broker, Hartford normally responds to renewal applications by indicating it received and was processing the application, received and was not processing the application for certain reasons, or lacked adequate information to determine whether to process the application. When the broker failed to receive a response, he assumed Hartford was still processing the application.

Without responding to plaintiff's renewal application for lawyers' professional liability insurance, Hartford issued a policy for the July 31, 2011 to July 31, 2012 period (the 2011 policy). Except for the lawyer's professional liability coverage,

which Hartford no longer provided, the 2011 policy provided substantially the same coverage as the 2010 policy. The premium for the 2011 policy was $649, a $2079 reduction from the 2010 policy.

Plaintiff renewed the Hartford policy for the July 2012 through July 2013 period (the 2012 policy) at a premium of $663. Like the previous year's policy, the 2012 policy contained no reference to lawyer's professional liability coverage. The 2011 and 2012 polices provided coverage for commercial general liability and business personal property only. The record does not reflect plaintiff filed a renewal application for lawyers' professional liability insurance for the 2012 policy period.

In June 2013, when plaintiff began receiving mass mailings from insurance providers regarding malpractice coverage, he contacted his insurance broker and inquired about his own malpractice insurance. A few weeks later, the insurance broker informed plaintiff his malpractice coverage had lapsed. Thereafter, in July 2013, plaintiff discovered a potential malpractice claim against him.

Based on these circumstances, in August 2013, plaintiff filed a verified complaint and order to show cause seeking to compel Hartford to provide retroactive lawyers' professional liability coverage in accordance with his June 2011 renewal application.

On August 30, 2013, the court denied plaintiff's order to show cause and directed that the case proceed in the normal course.

On April 25, 2014, plaintiff filed a second complaint seeking to compel the same coverage from Hartford. The second complaint also sought indemnification from the insurance broker for any malpractice liability plaintiff would incur during the coverage gap period. On June 2, 2014, plaintiff filed a third complaint against the insurance broker and Hartford seeking the same relief as alleged in the second complaint. Both Hartford and plaintiff's insurance broker filed answers, and the insurance broker also filed a motion to dismiss under <u>Rule</u> 4:6-2(e). The case was subsequently transferred from the Law Division to the Chancery Division. There, during a September 25, 2014 status conference, the court dismissed plaintiff's third complaint solely as to the broker.[1] That particular dismissal is not at issue on appeal. The matter proceeded against Hartford.

Several months later, plaintiff moved for summary judgment, and Hartford cross-moved for summary judgment the following day. At a hearing on the parties' motions, the court noted the "attention grabbing reduction" in plaintiff's premiums and that

---

[1] Plaintiff did not provide a transcript of the September 25, 2014 status conference wherein the trial court presumably provided its reasons for dismissing the complaint against the broker.

plaintiff "made a mistake by not noticing that [he] no longer had insurance." The court later issued a written decision.

In its written decision, the court ultimately found Hartford's May 31, 2011 letter "sufficient to notify [p]laintiff that Hartford would not renew the professional liability coverage in [p]laintiff's policy" and "Hartford fully complied with the regulatory requirements for notification of nonrenewal." That, coupled with "the drop in the premium and the absence of any mention of lawyers' professional liability coverage in the text of the 2011 and 2012 policies," proved plaintiff had "statutory and sufficient notice of the change in [his] coverage and cannot argue . . . [he] was reasonably unaware" he lacked coverage. Lastly, the court noted plaintiff's renewal application did not create a contract between plaintiff and Hartford. The court thus denied plaintiff summary judgment and granted Hartford summary judgment. This appeal followed.

On appeal, plaintiff argues the weight of the evidence on the motion record overwhelmingly supports his assertion that he never received Hartford's written non-renewal notice; the court failed to acknowledge Hartford's standard procedures and business practices concerning accepting and renewing insurance applications; and Hartford did not discontinue its malpractice insurance coverage as claimed.

A-0492-15T1

We review a trial court's summary judgment decision de novo. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014) (citing Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014)). In conducting our review, we must determine "whether the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law." Brill, supra, 142 N.J. at 536 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202, 214 (1986)). When making this determination, the evidence must be viewed "in the light most favorable to the non-moving party." Nicholas v. Mynster, 213 N.J. 463, 477-78 (2013) (quoting Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012)). A grant of summary judgment in favor of the moving party is only proper if "there is no genuine issue as to any material fact challenged[.]" Davis, supra, 219 N.J. at 405-06 (quoting R. 4:46-2(c)). "An issue of fact is genuine only if . . . the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c). In contrast, "summary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, supra, 447 U.S. at 248, 106 S. Ct. at 2510, 91 L. Ed. 2d at 212.

We turn first to plaintiff's argument that he never received the non-renewal notice. When it is "thoroughly feasible" for an insurance company "to alert an assured with respect to changes in a renewal policy," the insurance company must do so. Merchs. Indem. Corp. v. Eggleston, 37 N.J. 114, 121-22 (1962) (citing Bauman v. Royal Indem. Co., 36 N.J. 12 (1961)). "[W]here an insurance company purports to issue a policy as a renewal policy without fairly calling the insured's attention to a reduction in the policy coverage, [the insurance company] remains bound by any greater coverage afforded in the earlier policy." Bauman, supra, 36 N.J. at 23. Stated differently, an insured is not bound by a change in a renewal policy when the insurance company fails to notify the insured of the change. Id. at 24 (citation omitted). An insured's failure to "examine the renewal policy until after the event insured against" occurs is immaterial. Ibid. (citation omitted).

Under N.J.A.C. 11:1-20.2(a), "[n]o [insurance] policy shall be nonrenewed upon its expiration date unless a valid written notice . . . has been mailed or delivered to the insured in accordance with the provisions of this subchapter." Such a nonrenewal notice is not valid unless sent by certified mail or by first class mail, "if at the time of mailing the insurer has obtained from the Post Office Department a date stamped proof of

mailing showing the name and address of the insured[.]" N.J.A.C. 11:1-20.2(i).

Here, by way of notice on May 31, 2011, two months before plaintiff's 2010 policy expired, Hartford duly notified plaintiff it would no longer provide coverage for lawyer's professional liability. That notice further specified, "[i]f your state requires a notice of non-renewal as a result of the indicated change(s), this is [the insurer's] notice to you in compliance with the applicable law." In the trial court's letter decision, it noted the insurer provided a copy of the notice "and a certificate of mailing with [p]laintiff's address and policy number listed as a recipient." We agree with the trial court that the May 31 notice complied with the regulatory requirements for non-renewing the professional liability coverage in plaintiff's policy. That plaintiff was unaware of the contents of the notice does not render Hartford non-compliant with the law.

Moreover, plaintiff was charged with knowledge of the policy's contents. See, e.g., Merchs. Indem. Corp., supra, 37 N.J. at 121 ("an insured is chargeable with knowledge of the contents of a policy, in the absence of fraud or unconscionable conduct on the part of the carrier"); Lehrhoff v. Aetna Cas. and Sur. Co., 271 N.J. Super. 340, 346-47 (App. Div. 1994) ("a conscientious policyholder, upon receiving the policy, would

likely examine the declaration page to assure himself that the coverages and their amounts, the identity of the insured [property], and the other basic information appearing thereon are accurate and in accord with his understandings of what he is purchasing"); Morrison v. Am. Int'l Ins. Co. of Am., 381 N.J. Super. 532, 542 (2005) (if "an insured purchases an original policy of insurance he may be expected to read it and the law may fairly impose upon him such restrictions, conditions and limitations as the average insured would ascertain from such reading").

In addition, while the trial court acknowledged Hartford received and should have responded to plaintiff's renewal application, plaintiff himself should have noticed the absence of lawyers' professional liability coverage on his declarations page and the sharp drop in premiums for his 2011 and 2012 policies. See Prather v. Am. Motorists Ins. Co., 2 N.J. 496, 503 (1949) (noting that a premium may be considered when construing an insurance policy since "[a]n insurer may fairly be assumed to intend to limit the risk to the price exacted."). That large premium drop should have been a "red flag," and plaintiff's apparent failure to take notice weakens his argument for coverage.

Plaintiff also argues his renewal application was accepted and should have been processed by Hartford. Plaintiff did, in fact, complete and submit an application for renewed coverage to

his broker, who forwarded the application to Hartford. Hartford did not respond.

Although the better practice would have been to notify plaintiff or his broker that lawyers' professional liability coverage would not be renewed, plaintiff's completion of the renewal application did not obligate Hartford to process the application and renew insurance in a category for which coverage was no longer offered. Plaintiff's renewal application did not create a contract between himself and Hartford because Hartford did not offer lawyers' professional liability coverage as part of plaintiff's renewed insurance policy. See Trs. of First Presbyterian Church v. Howard Co. Jewelers, 12 N.J. 410, 414 (1953) (citation omitted) ("an offer to constitute a contract must be in a form which is intended of itself to create legal relations on its acceptance. It must contemplate the assumption of legal rights and duties and must show a clear intention to assume liability.").

The record clearly reflects that Hartford did not intend to provide plaintiff with continued lawyers' professional liability coverage. In fact, Hartford intended the opposite. Its May 31, 2011 notice to plaintiff manifested its intent to discontinue lawyers' professional liability coverage. Thus, contractual principles do not compel the result that Hartford retroactively provide plaintiff lawyer's professional liability coverage.

Plaintiff had ample notice that his 2011 and 2012 polices did not include lawyers' professional liability coverage. His renewal application did not obligate Hartford to provide coverage it no longer offered. The trial court did not err in granting Hartford summary judgment.

Plaintiff's remaining arguments are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION