870 A.2d 644 (2005)
376 N.J. Super. 305
Karen McCLELLAN, Plaintiff,
v.
Joel E. FEIT, Jr., Joyce Unger Feit, Atmostemp, Inc., M.J. Parker, Mr. Goodhome, Township of Voorhees, Weichert Realtors, Marti Toudy, Pat Mckenna Realtors, and Robert Grace, jointly, severally, and in the alternative, Defendants, and
Joel E. Feit, Jr., and Joyce Unger Feit, Defendants/Third-Party Plaintiffs-Appellants,
v.
The Prudential Property and Casualty Insurance Company of New Jersey, Third-Party Defendant-Respondent, and
Sandra McCaffrey, Joan Wallis, American Title Insurance Co., through its Agent, Delaware Valley Abstract Corp., and Charles F. Ober & Son, Inc., Third-Party Defendants.
Superior Court of New Jersey, Appellate Division.
Submitted February 8, 2005.
Decided April 11, 2005.
*646 Giansante & Cobb, for appellants (Louis Giansante, of counsel and on the brief).
Debra Hart, Mount Laurel, for respondent (Cindy B. Shera, on the brief).
Before Judges LEFELT, FUENTES and FALCONE.
The opinion of the court was delivered by
LEFELT, J.A.D.
John E. Feit, Jr., and Joyce Unger Feit appeal from a summary judgment, which concluded that their homeowners' insurance carrier, Prudential Property and Casualty Insurance Company of New Jersey, had no duty to defend or indemnify the Feits in a civil action brought against them by Karen McClellan. McClellan's suit sought recovery of remediation costs allegedly caused by the Feits' misrepresentation that there were no underground oil storage tanks on residential property the Feits had sold to McClellan some five years earlier. The motion judge found that Prudential did not have to supply a defense to the McClellan action because the Feits' homeowners' policy excluded intentional acts.
We agree that the intentional misrepresentation claim was correctly excluded from coverage. We conclude, however, that a prior policy, which required a defense for the negligent misrepresentation claim that McClellan also asserted against the Feits, may have been controlling. Consequently, we reverse and remand.

I.
Here is how the Feits coverage claim arose. The Feits were former owners of residential property in Voorhees. In 1996, the Feits sold the property to McClellan. Before selling the property, the Feits converted their oil heating system to gas and hired Atmostemp to "close and abandon" their underground heating oil storage tank. Upon selling the home to McClellan, the Feits represented in the agreement of sale that "Seller warrants that to the best of Seller's knowledge" there were no underground fuel tanks on the property and that any tanks have been removed. The Feits then handwrote "permit 930698 9/28/93." The referenced permit had been issued by Voorhees Township and granted Atmostemp permission to abandon the underground tank. The referenced date was the date of abandonment. In the "Seller's Statement To Buyer Regarding Residential Property," the Feits were asked whether they were "aware of any ... [u]nderground storage tanks on the property." The Feits answered in the negative.
Almost five years later, when McClellan was selling the Voorhees property, an underground oil storage tank was discovered on the property. The tank had been leaking, so McClellan had to remove the tank and remediate the soil and underground *647 water. She filed suit against the Feits to recover the remediation costs.[1]
McClellan's complaint alleged the Feits were aware of the presence of the underground tank on the property, but misrepresented by failing to notify or disclose this information to the buyer. In addition to misrepresentation, McClellan also alleged, among other claims, fraud, breach of contract, equitable fraud, failure to disclose a material fact, and breach of the Consumer Fraud statute.
When the Feits purchased the Voorhees property, they obtained homeowners' insurance from Prudential and received the 1986 version of Prudential's HO 3 homeowners' policy. In December 1994, a few years before the Feits' sale of the property to McClellan, Prudential amended its HO 3 homeowners' insurance policy, and subsequently replaced the Feits' policy with the new 1994 version. There is no evidence in the record of any other amendment of the relevant homeowners' policy, and therefore, when the Feits sold the house to McClellan in 1996, the pertinent homeowners' insurance policy was the 1994 version.
Upon receiving McClellan's complaint, the Feits sought a defense from Prudential under their homeowners' policy. Prudential denied coverage. The insurance company took the position that the damages sought were not "property damage" as defined under the policy. Even if "property damage" occurred during the policy period, Prudential contended that the claim did not constitute an "occurrence" under the policy. Prudential also asserted that the policy excluded coverage for intentional acts, and the date of the loss contained in McClellan's complaint fell outside the Feits' policy period, which ended on June 28, 1996 when the property was sold to McClellan.
After Prudential declined to change its position upon the Feits' reconsideration request, the Feits joined Prudential in the McClellan suit as a third-party defendant. They alleged that the insurance company had exhibited bad faith, breached the insurance contract, breached the implied covenant of good faith and fair dealing, and engaged in deceptive trade practices.
Eventually the dispute came before a motion judge on the parties' cross motions for summary judgment. The judge granted Prudential's summary judgment motion and denied the Feits' cross motion. The judge found no obligation to defend because the 1994 policy excluded intentional acts, and the judge determined that McClellan's complaint alleged "only intentional acts." The judge also believed that the claim, which arose out of an agreement of sale, was excluded because the 1994 policy does "not cover for liability under any written or unwritten contract or agreement whether personal or in connection with any business."

II.
"[T]he duty to defend comes into being when the complaint states a claim constituting a risk insured against." Danek v. Hommer, 28 N.J.Super. 68, 77, 100 A.2d 198, 203 (App.Div.1953), aff'd o.b., 15 N.J. 573, 105 A.2d 677 (1954). In determining whether an insurer has a duty to defend, the court compares the allegations in the complaint with the language of the *648 policy. Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173, 607 A.2d 1255, 1259 (1992). The duty to defend arises when the allegations in the complaint correspond with the language of the policy, irrespective of the claim's actual merit. Ibid."When multiple alternative causes of action are stated, the duty to defend will continue until every covered claim is eliminated." Id. at 174, 607 A.2d at 1259.
Here, there is no question that McClellan alleged in her complaint an intentional misrepresentation. She stated the Feits "intentionally acted to deprive [her] of relevant information with regard to the sale of real estate to her" "by actively and intentionally failing to disclose the presence of an underground oil storage tank." McClellan also alleged that defendants "were aware of the presence of the underground storage tank and that it had not been removed," but yet the Feits "affirmatively told [McClellan] ... that there was no underground oil tank located on the property."
Both the 1986 and 1994 policies exclude coverage for intentional acts. The 1986 policy excluded "property damage ... which is expected or intended by the insured." The 1994 policy excluded property damage "which may reasonably be expected to result from the intentional act of the insured or which is in fact intended by the insured." Such exclusions are common and valid. See Harleysville Ins. Cos. v. Garitta, 170 N.J. 223, 231, 785 A.2d 913, 918 (2001). The motion judge, therefore, correctly concluded that McClellan's intentional misrepresentation claim was barred from coverage.

III.
Contrary to the motion judge's decision, however, McClellan's complaint, though not a model of clarity, can be read to allege negligent misrepresentation. Negligent misrepresentation constitutes "[a]n incorrect statement, negligently made and justifiably relied on," which results in economic loss. Kaufman v. i-Stat Corp., 165 N.J. 94, 109, 754 A.2d 1188, 1195 (2000) (citation omitted). After reciting the basic facts upon which the misrepresentation was based, the complaint alleged in the fifth count that the Feits "knew or should have known of the presence of the underground oil storage tank" and its leakage. McClellan also alleged in the Eleventh Count of her complaint that Atmostemp, on behalf of the Feits, "negligently conducted the abandonment of the underground storage tank." When read with the generally alleged underlying facts regarding the Feits' failure to disclose, these counts constitute a claim that the Feits negligently misrepresented that the property did not contain a leaking underground oil storage tank.
To determine whether a homeowners' policy provides coverage during a particular period, we examine the occurrence giving rise to the claim, rather than the date the claim was made. E.g., Zuckerman v. Nat'l Union Fire Ins. Co., 100 N.J. 304, 310-11, 495 A.2d 395, 398 (1985). The occurrence or misrepresentation at issue here, as found by the motion judge, happened either at the time the parties entered into the agreement of sale, March 1996, or at the time of the sale itself, June 1996. Consequently, the 1994 policy applied to McClellan's negligent misrepresentation claim.
The 1994 policy covered "property damage caused by an occurrence." The policy, however, excluded from the definition of an occurrence "negligent misrepresentations or omissions of any nature or kind in the sale of real or personal property." Although policy exclusions are usually strictly construed, exclusions will be applied *649 as written, so long as the language is clear, unambiguous, and not violative of public policy. Prudential Prop. & Cas. Ins. Co. v. Brenner, 350 N.J.Super. 316, 321-22, 795 A.2d 286, 289 (App.Div.2002).
The provision defining "occurrence" as not including negligent misrepresentations in connection with the sale of real estate appears clear and unambiguous. Furthermore, no party asserts any violation of public policy in connection with this exclusionary definition. Thus, the definition of occurrence in the policy is enforceable as written, id. at 321, 795 A.2d at 289, and the definition bars coverage for this claim, at least under the 1994 version of Prudential's HO 3 homeowners' insurance policy.

IV.
The Feits argue, however, that it is the 1986 version of the homeowners' policy that applies because Prudential altered the coverage of that policy, without proper notice to the insured and in violation of N.J.A.C. 11:1-20.2. The regulation the Feits rely upon, however, is not applicable. N.J.A.C. 11:1-20.2(a)-(i) prohibits nonrenewal or cancellation of a policy unless the insurer mails or delivers notice to the insured not more than 120 days nor less than thirty days before expiration of the policy. These rules are not applicable to this dispute because the policy was renewed and not cancelled.
Regardless of N.J.A.C. 11:1-20.2's inapplicability, notification of changes in renewal policies under some circumstances is still required. Although insurance companies may make changes when renewing policies, N.J.S.A. 17:33B-33b, 17:29C-6(E); N.J.A.C. 11:1-20.2(j), in order to fulfill the insured's expectations that the coverage provided by the renewed policy remains substantially identical to the prior policy, courts will void a reduction in coverage that was not called to the insured's attention. Bauman v. Royal Indem. Co., 36 N.J. 12, 25-26, 174 A.2d 585, 592 (1961).
On a renewal, "[a]bsent notification that there have been changes in the restrictions, conditions or limitations of the policy, the insured is justly entitled to assume that they remain the same and that his coverage has not in anywise been lessened." Id. at 25, 174 A.2d at 592. Any reduction in coverage upon a renewal must be called to the insured's attention so that the insured can decide whether to continue the coverage or purchase new insurance. Id. at 26, 174 A.2d at 592.
When "the conditions for renewal coverage are made evident to the insured," the company can be certain that the renewal will be valid. See Am. Cas. Co. v. Continisio, 17 F.3d 62, 66 (3d Cir.1994). But, when the insured is not specifically and clearly informed of the change, the renewal will be ineffective. See Millbrook Tax Fund, Inc. v. P.L. Henry & Assocs., 344 N.J.Super. 49, 53-54, 779 A.2d 1120, 1122-23 (App.Div.2001) (involving reduction of a limited reporting period from one year to sixty days); Skeete v. Dorvius, 368 N.J.Super. 311, 317-18, 845 A.2d 1265, 1269 (App.Div.), certif. granted, 180 N.J. 456, 852 A.2d 192 (2004) (involving step-down uninsured/underinsured motorist coverage).
In this case, Prudential attempted in the renewal to eliminate negligent misrepresentation coverage by adding occurrence language and specifically excluding negligent misrepresentation from the definition of occurrence. Because negligent misrepresentation was not even mentioned in the 1986 policy, its specific exclusion from coverage in the 1994 renewal renders the change material and requires proper notice. See Bauman, supra, 36 N.J. at 25-26, 174 A.2d at 591-92; Skeete, supra, 368 N.J.Super. at 317-18, 845 A.2d at 1269; Millbrook Tax Fund, Inc., supra, *650 344 N.J.Super. at 53-54, 779 A.2d at 1123-24; Continisio, supra, 17 F.3d at 66.
The motion judge did not determine whether proper notice of the amended policy was provided the Feits, and we cannot decide this issue from the record. The record reflects that Prudential mailed to the Feits a standard cover letter with their renewal package in July or August 1995. The letter stated, in part, that the "enclosed package reflects the recent change(s) made to [the named insured's] Homeowners policy." The renewal package apparently included the 1994 edition of the policy, but according to the document contained in the record, did not specifically notice or highlight the added definition of occurrence and the elimination of coverage for negligent misrepresentations.
Although the documents included in the record do not reveal whether Prudential brought these changes in the 1994 policy to the Feits' attention, according to Prudential's compliance analyst, the 1994 changes in the definition of occurrence would have been brought to the insureds' attention through "special provisions" in the renewal package. There were apparently two special provisions in 1995, but we are uncertain as to the content of these special provisions.
Considering this deficiency in the record, a remand seems in order. But, obviously, the remand would only be necessary if the Feits have correctly asserted that the 1986 policy covered negligent misrepresentation.

V.
The question of whether negligent misrepresentations are covered in homeowners' policies has raised difficult issues for courts. As we explained above, a negligent misrepresentation constitutes "[a]n incorrect statement, negligently made and justifiably relied on, [and] may be the basis for recovery of damages for economic loss ... sustained as a consequence of that reliance." H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334, 461 A.2d 138, 142-43 (1983); see also, Kaufman, supra, 165 N.J. at 109, 754 A.2d at 1195-96. Negligent misrepresentations are quite closely related to equitable and legal fraud. Equitable fraud requires "`(1) a material misrepresentation of a presently existing or past fact; (2) the maker's intent that the other party rely on it; and (3) detrimental reliance by the other party.'" First Am. Title Ins. Co. v. Lawson, 177 N.J. 125, 136-37, 827 A.2d 230, 237 (2003) (quoting Liebling v. Garden State Indem., 337 N.J.Super. 447, 453, 767 A.2d 515, 518 (App.Div.), certif. denied, 169 N.J. 606, 782 A.2d 424 (2001)). The elements of legal fraud include "a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 624, 432 A.2d 521, 524 (1981).
Besides being closely related to equitable and legal fraud, some courts have determined that negligent misrepresentations are actually intentional wrongs because the insured intends that the other party rely on the misrepresentation. E.g., Safeco Ins. Co. of Am. v. Andrews, 915 F.2d 500, 502 (9th Cir.1990) (insured's misrepresentations in connection with the sale of property were not occurrences under the policy); Allstate Ins. Co. v. Chaney, 804 F.Supp. 1219, 1221-22 (N.D.Cal.1992) (under California law, negligent misrepresentation is treated as a type of fraud and therefore cannot be an "accident" or an "occurrence" under an insurance policy); Am. States Ins. Co. v. Canyon Creek, 786 F.Supp. 821, 825 (N.D.Cal.1991) (negligent misrepresentations *651 made in conjunction with the sale of property "falls within the rubric of fraud and not ordinary negligence" and cannot qualify for insurance coverage); Miller v. W. Gen. Agency, Inc., 41 Cal.App.4th 1144, 49 Cal.Rptr.2d 55, 58 (1996) (misrepresentations causing investment or other economic loss are considered purposeful rather than accidental for purposes of insurance coverage); Harding v. Wang, 729 So.2d 9, 11-12 (La.Ct.App.1999) (negligent failure to disclose termite damage when selling a house was not an accident or occurrence under homeowner's policy).
There is also out-of-state support concluding that negligent misrepresentations are covered by homeowners' insurance policies. H. Brent Brennenstuhl, Annotation, Negligent Misrepresentation as "Accident" or "Occurrence" Warranting Insurance Coverage, 58 A.L.R.5th 483 (1998). E.g., Aetna Cas. & Sur. Co. v. Metro. Baptist Church, 967 F.Supp. 217, 224 (S.D.Tex.1996) (negligent misrepresentation is an "occurrence" under Texas law); Universal Underwriters Ins. Co. v. Youngblood, 549 So.2d 76, 78 (Ala.1989) (absent specific exclusion, insurer must defend claims for negligent and innocent or reckless misrepresentation); Sheets v. Brethren Mut. Ins. Co., 342 Md. 634, 679 A.2d 540, 551 (1996) (negligent misrepresentation of condition of property was a covered occurrence or accident); Lampert v. State Farm Fire & Cas. Co., 85 S.W.3d 90, 94 (Mo.Ct.App.2002) (negligent misrepresentation of conditions in home's basement was covered by homeowners' policy); Wood v. Safeco Ins. Co. of Am., 980 S.W.2d 43, 45, 52 (Mo.Ct.App.1998) (seller's negligent misrepresentation that residence was not in flood plain and had never flooded were covered under liability insurance).
New Jersey has not as yet directly confronted this issue.[2] In SL Industries, Inc. v. American Motorists Insurance Co., 128 N.J. 188, 208, 607 A.2d 1266, 1276-77 (1992), however, our Supreme Court suggested that negligent misrepresentations could be included within homeowner insurance coverage. Specifically, the Court observed that "[c]ourts generally have held that although the insurer must defend an insured who is accused of reckless, negligent, or innocent misrepresentations, no defense is required when the insured is accused of intentional misrepresentations." Ibid. The distinction arises because "[a]n intent to misrepresent is sufficient to presume an intent to injure," ibid., whereas "[a]n allegation of negligence presumes the absence of an intent to injure." Voorhees, supra, 128 N.J. at 185, 607 A.2d at 1265.
In this case, the misrepresentation appears based upon the Feits understanding of Atmostemp's function in "abandoning" the tank. The claim that the Feits should have known that the tank had leaked, was leaking, or would leak is grounded in negligence rather than intentional conduct. Although the Feits intended McClellan to rely on their statement that there was no underground tank on the property, the Feits specifically referenced the permit and date by which Atmostemp was supposed to have dealt with the tank. This reference supports an inference that the Feits lacked any intent to injure McClellan by the failure to disclose the true condition of the tank.
Prudential argues, however, that its 1986 policy was identical to the 1994 policy, except that the 1986 policy did not specifically *652 exclude negligent misrepresentations. According to Prudential, negligent misrepresentations were also excluded in the 1986 policy. After reviewing the policies, however, we disagree with Prudential's assessment of the similarity between the two policies.
The 1986 policy covered personal liability claims brought against any insured "for damages because of ... property damage to which this coverage applies." The policy did not require that property damage be "caused by an occurrence" or accident and did not even define occurrence. It did, however, define property damage as "physical injury to or destruction of tangible property, including loss of use of this property." The policy's personal liability coverage also did not apply "to property damage to property owned by the insured."
Here, the negligent misrepresentation by the Feits resulted in the purchase of the insured premises without disclosing and possibly remedying a buried fuel tank, which was leaking at the time of the misrepresentation or began leaking sometime thereafter.[3] The leaking tank and perhaps the contaminated ground water can be considered damage to tangible property not owned by the insured, at least immediately after the alleged misrepresentation. Because the policy did not require that property damage be caused by an occurrence, there was no requirement under the 1986 policy that the damage to the tank or ground water be directly caused by the misrepresentation or occur during the policy term. Thus, McClellan's negligent misrepresentation claim was brought against the Feits "for damages because of... property damage to which" personal liability coverage appears to apply under the 1986 policy.
Prudential also argued that there was no coverage under the 1986 policy because McClellan's entire complaint arose from the sale of a home, which is not covered. Here again, the 1994 policy clearly sets forth this exclusion by not covering liability "under any written or unwritten contract or agreement, whether personal or in connection with any business." The 1986 policy, however, is not so clear. That policy provides that "Personal Liability, does not apply to:" "liability assumed under any unwritten contract or agreement, or by contract or agreement in connection with any business of the insured." Here, liability was not "assumed under any unwritten contract" and the written contract in this case was personal and not connected with any business of the insured. The 1986 policy thus covered McClellan's claim or, at worst, was ambiguous in its "Personal Liability" coverage. When the language of a policy is ambiguous, "the ambiguity is resolved in favor of the insured and in line with an insured's objectively-reasonable expectations." Voorhees, supra, 128 N.J. at 175, 607 A.2d at 1260 (citations omitted).
In view of the language used in the 1986 policy, which did not define either occurrence or accident, and considering the statements made by the Supreme Court in the 1992 SL Industries decision, we conclude that the 1986 policy covered the negligent misrepresentation claim. Therefore, we must remand to the trial court for a determination of whether at the time the Feits renewed their policy in 1995, Prudential successfully replaced the 1986 version of its homeowners' policy with the *653 1994 version, which clearly excluded negligent misrepresentation.

VI.
On the remand, if the trial court determines that the Feits received proper notice of the changes in the definition of occurrence, which reduced the coverage of their homeowner's policy, then the 1994 policy would be in effect at the time of the occurrence, and Prudential rightly refused to provide a defense to the Feits.
If the Feits did not receive proper notice of the policy change, however, then the 1986 policy version remains in effect, the Feits would have been due a defense from Prudential, and the court should proceed to determine what fees and costs expended by the Feits are reimbursable by Prudential.
We acknowledge that Prudential asserted several additional reasons for disclaiming coverage of McClellan's claim and argued some of these reasons before the trial court. However, in opposition to the Feits' appeal, Prudential focused upon and briefed only the applicability of the 1994 homeowners' policy exclusion, and the inapplicability of N.J.A.C. 11:1-20.2 to whatever notice requirements it may have had to replace the 1986 policy version with the 1994 version. With regard to the 1986 policy, therefore, Prudential has waived all other reasons for disclaimer that could have supported the motion judge's summary judgment. State v. Lefante, 14 N.J. 584, 589-90, 103 A.2d 585, 587 (1954).
In addition, all of the Feits' other arguments seeking reversal of the judge's summary judgment, including indemnity, bad faith, punitive damage, and consumer fraud, have been analyzed and found wanting. They are all without sufficient merit to warrant discussion in this decision. R. 2:11-3(e)(1)(E).
Reversed and remanded for further proceedings consistent with this decision.
NOTES
[1] Besides suing the Feits, McClellan also sued Atmostemp, along with the entities that had conducted the prior-to-closing inspection of the premises, the buyer's and sellers' real estate agents and their firms, and Voorhees Township. McClellan eventually settled with all defendants and executed a consent order that preserved the Feits' rights against Prudential.
[2] The Supreme Court granted certification in Lemay v. Reilly, 179 N.J. 373, 845 A.2d 1255 (2004), to consider this issue.
[3] There is some evidence in the record that the tank deteriorated by wear and tear and began leaking after the sale to McClellan. This evidence is not conclusive, however, as Prudential and plaintiff never joined issue on this point.