Prison, Shannon, J.
This insurance coverage dispute arises out of a class action complaint (“underlying suit”) brought by the plaintiff, Addison Automatics, Inc. (“Plaintiff’), against defendants Precision Electronics Glass, Inc. (“Precision”) and Phillip Rossi. On *716 December 14, 2012, the United States District Court for the Northern District of Illinois (Coleman, J.) approved and issued final judgment on a settlement in the Underlying Suit. That settlement contemplated a $15,875,500judgment against Precision, the satisfaction of which the settlement class agreed to seek primarily from Precision’s insurers — defendants The Netherlands Insurance Company (“Netherlands”) and Excelsior Insurance Company (“Excelsior,” collectively, with Netherlands, the “insurers”). Accordingly, Plaintiff has instituted the present action requesting declaratory judgment on the obligations of the insurers pursuant to Precision’s insurance policies.
This case is now before the court on Plaintiff and the insurers’ cross motions for summary judgment. For the reasons set forth below, the motions are both ALLOWED in part and DENIED in part.
BACKGROUND
I. The Underlying Suit
Precision is a New Jersey corporation doing business nationwide, including within the Commonwealth of Massachusetts. Rossi is Precision’s president and sole shareholder. In 2007, Rossi contracted with a third party to conduct a marketing campaign for Precision that included sending advertisements to potential customers via facsimile (“fax”). Thereafter, in January 2008, over 31,000 advertising faxes were sent to various entities on Precision’s behalf. Rossi has testified in both a sworn affidavit and at his deposition that Precision “assumed, understood, and believed,” based on the representations of its marketing consultant, that the fax campaign was lawful and that any potential recipients, though not current Precision customers, were nonetheless interested in Precision’s business at that time.
Plaintiff, an Illinois corporation, received one of Precision’s advertising faxes. OnAugust 13,2010, Plaintiff filed suit against Precision and Rossi. Both individually and on behalf of a putative class of similarly situated persons, Plaintiff claimed that Precision’s advertisements used recipients’ fax machines, toner, and paper supplies without their consent in violation of the federal Telephone Consumer Protection Act (“TCPA”), the Illinois Consumer Fraud and Deceptive Business Practices Act, and common-law conversion.
The parties ultimately entered into a settlement agreement that was approved by the Honorable Sharon Johnson Coleman of the United States District Court for the Northern District of Illinois on December 14,2012. In its Final Approval of the settlement, the court entered judgment in the amount of $15,875,500 against Precision for violations of the TCPA.[2],[3] The court ordered Precision to pay $85,000 to Plaintiffs attorneys in partial satisfaction of the judgment, while the settlement class was to collect the remaining portion from any proceeds available through Precision’s insurance policies. The court found that Rossi and Precision “believed that they had the consent of the fax recipients when they sent the faxes” at issue and “did not intend to injure the fax recipients.” It further acknowledged that Precision had tendered the suit to its insurers, Netherlands and Excelsior, but that the companies had disclaimed coverage and refused to defend.[4] Finally, the court found the settlement to be fair, prudent, and made in reasonable anticipation of liabiliiy.
II. The Present Action
Netherlands and Excelsior, both maintaining principal places of business in Massachusetts, were Precision’s insurers at all times relevant to the underlying suit — from 2005 through 2008. Netherlands was Precision’s primary insurer, while Excelsior provided excess liability coverage. Both insurers operated under the umbrella of Peerless Indemnity Insurance Company (“Peerless”), which issued Netherlands and Excelsior insurance policies through its agents. Heritage Insurance Agency, Inc. (“Heritage”), operating in New Jersey, was one such Peerless agent. Precision purchased its 2005-2008 Netherlands and Excelsior insurance policies through Heritage.
In 2005, Peerless sent notice to its agents, including Heritage, that it would be introducing a new exclusion into all its insurance policies. The new exclusion would generally bar insurance companies under the Peerless umbrella from providing liabiliiy coverage for actions alleged to violate the TCPA or any other law prohibiting unsolicited faxing (the ‘TCPA Exclusion”). There is no evidence in the record that Peerless, Netherlands, Excelsior, or any Heritage employee communicated notice of the new, planned exclusion to Precision at that time.
In March 2006, the insurers sent out renewal policies that were to cover Precision’s 2006-2007 coverage term. The record is unclear as to whether they were mailed to Heritage, which was to provide the information to Precision through its broker, or directly to Precision itself.[5] The declaration sheets for both Netherlands’s and Excelsior’s 2006-2007 renewal policies included the line item, “0305 Exclusion-Violation of Statutes,” under the heading “Forms and Endorsements,” which referred the insured to a certain form within the policy that described the TCPA Exclusion. Then, on page 52 of Netherlands’s policy and page 19 of Excelsior’s policy,[6] a form entitled “Important Notice to Policyholders” provided the following:
Exclusion — Violation of Statutes that Govern E-mails, Fax, Phone Calls or Other Methods of Sending Material or Information. This notice does not form a part of your insurance contract. The notice is designed to alert you to coverage changes when the exclusion for violation of statutes that govern e-mails, fax, phone calls or other methods of sending material or information is attached to this policy. .. Please read your policy, and the endorsement attached to your policy, carefully... [C]overage is excluded for “bodily injury,” “property damage” or “personal and advertising injury” arising directly or indirectly out of any action or omission that violates or is alleged to violate the Telephone Consumer Protection Act (TCPA) [ ].
*717 (emphasis in original). The body of each renewal policy also contained the TCPA Exclusion sections themselves, which included the following title headings: ‘This endorsement changes the policy. Please read it carefully” (emphasis in original) and “This endorsement modifies [the] insurance provided [ ].” The line item in the declaration sheets, as well as the TCPA Exclusions themselves and related endorsements, were also included in the insurers’ 2007-2008 renewal policies.
As indicated in the TCPA Exclusions, Precision’s 2007-2008 insurance policies with Netherlands and Excelsior provided that the insurers had the duty to cover liability for any “property damage” done by Precision, which included lost use of another’s properly, if “caused by an ‘occurrence.’ ” An “occurrence” was defined as an “accident,” which term was not itself defined. This coverage did not extend to damage “expected or intended from the standpoint of the insured.”
Pursuant to the 2007-2008 policies, both insurers also agreed to cover “advertising injury liability,” which extended to any offenses arising out of Precision’s business. Such injury was defined, in part, as “publication, in any manner, of material that violates a person’s right to privacy. ”[7] None of these terms, including “person” and “right to privacy,” were themselves defined. The contracts further provided that any advertising injury “caused by or at the direction of the insured with the knowledge that the act would violate the rights of another” was excluded from coverage.
Precision initiated its faxing campaign in January 2008. In August 2010, Plaintiff brought the underlying suit against Precision and Rossi. By September 2010, Netherlands and Excelsior had disclaimed coverage and refused to defend Precision and Rossi. The Underlying Suit subsequently settled in December 2012. In the meantime, Plaintiff filed the present action for declaratory judgment, in November 2011.[8] Plaintiffs complaint before this court contains two counts. Count I alleges that Netherlands and Excelsior had a duly to defend Precision and Rossi in the Underlying Suit and seeks a declaration that the insurers have a duty to pay any judgment that was entered against Precision in federal court. Count II states a claim for bad faith, asserting that Netherlands and Excelsior acted improperly in denying coverage and refusing to defend Precision in the underlying suit. The insurers now move for summary judgment.[9] Plaintiff opposes the motion and requests that judgment enter in its favor.
DISCUSSION
Defendants Netherlands and Excelsior maintain that Precision’s act of sending unsolicited faxes are not covered by either insurance policy. They argue that the TCPA Exclusions, as well as the exceptions to any “property damage” and “advertising injury” coverage, apply and, therefore, that the insurers had no duty to defend Precision in the underlying suit and need not satisfy the judgment against Precision. Plaintiff contends that Precision did not receive notice of the TCPA Exclusions sufficient to incorporate those terms into the insurance contracts. It further asserts that Precision’s conduct constituted both “property damage” and “advertising injury” covered by policies. Thus, Plaintiff argues, Netherlands and Excelsior must pay the remaining balance of the settlement judgment and be found to have acted in bad faith in refusing to defend Precision in the underlying suit. The court addresses each argument below, ultimately holding that (1) the insurance policies covered Precision’s actions under New Jersey law and (2) the insurers nonetheless did not act in bad faith when they disclaimed coverage in the underlying suit.
I. Standard of Review
Summary judgment is appropriate where there are no genuine issues of material fact and the record demonstrates that the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991). An issue is “genuine” when the evidence would allow a reasonable fact-finder to resolve it in favor of the non-moving parly, Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991), and a fact is “material” when it might affect the outcome of the suit under applicable law, Carey v. New England Organ Bank, 446 Mass. 270, 278 (2006). Here, where the court is called upon to review and determine the scope of insurance contracts covering a New Jersey business, the applicable law is that of New Jersey. See Terra Nova Ins. Co. v. Fray-Witzer, 449 Mass. 406, 411 (2007) (“Terra Nova”). Pursuant to New Jersey law, declaratory judgment actions seeking clarification of an insurer’s contractual duties may be decided on summary judgment. Adron, Inc. v. Home Ins. Co., 292 N.J.Super. 463, 473 (App.Div. 1996).
II. TCPA Exclusions Not Enforceable
Exclusion clauses contained in insurance contracts may shape and restrict the coverage available to an insured. Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 237 (1979) (“[T]he premium paid by the insured does not buy coverage for all property damage!,] but only for that fype of damage provided for in the policy”). New Jersey courts will generally enforce lawful exclusion provisions. Doto v. Russo, 140 N.J. 544, 559 (1995). Here, the TCPA Exclusions in the Netherlands and Excelsior contracts clearly indicate that conduct alleged to violate the TCPA is not covered, and the parties agree that Precision’s conduct in fact violated the TCPA, as was found by the Illinois federal court’s final judgment in the Underlying Suit. As such, the policies seem to exclude coverage for any damages arising out of Precision’s fax marketing campaign.
Yet, while the language and scope of the TCPA exclusions are clear, their enforceability in this case is much less so. In New Jersey, insurance policy renewals are strictly controlled by the Commissioner of the Department of Banking and Insurance (“Commissioner”). Piermount Iron Works, Inc. v. Evanston Ins. Co., 197 N.J. 432, 439 (2009). The Commissioner has the *718 statutory authority to promulgate strict regulations governing insurance entities. See N.J. Stat. §17:1-15(e). One such rule insurers must abide in New Jersey states that notice of “any change in contract terms shall be given to the insured in writing not more than 120 days nor less than 30 days prior to the due date of the [renewal] premium.” N.J. Admin. Code §11:1-20.2(c) (the “Notice Rule”). Though an insurance company is free to alter the terms of its policy from year to year, McClellan v. Feit, 376 N.J.Super. 305, 315 (App.Div. 2005) (“McClellan”), if it nonetheless fails to provide notice of such changes according to the Notice Rule, “the insured shall be entitled to continue the expiring policy at the same terms and premium until such time as the insurer shall send appropriate notice of.. . renewal.” Id, at§ll:l-20.2(j).
Precision’s insurance contracts with Netherlands and Excelsior did not contain the TCPA Exclusions prior to 2006. Thus, the addition of those provisions constituted a change in the previous contract terms and had to be noticed according to the Notice Rule before Precision renewed its insurance policies that year.[10] While New Jersey courts have not set out what particular form of notice is required to satisfy the Notice Rule standard, Skeete v. Dorvius, 184 N.J. 5, 9 (2005) (“Skeete”), it is clear that any changes to a current insurance policy must be “fairly” conveyed to the policyholder, id.[11] The Appellate Division of the New Jersey Superior Court has stated that “when the insured is not specifically and clearly informed of [a] change, the renewal will be ineffective.” McClellan, 376 N.J.Super. at 315.
In the seminal case of Bauman v. Royal Indem. Co., 36 N.J. 12 (1961), the New Jersey Supreme Court examined a claim of insufficient notice by an insurer. In Bauman, the insurance company inserted an exclusion clause into the insurance contract and simply sent the new policy package to the insured without providing any particular notice of the change. Id, at 26. Considering such conduct, the Court declared that “common fairness as well as legal duty dictated that [insurers] call the lessened coverage to the attention of the insureds so that they might suitably protect themselves.” Id. The Court went on to state that, at minimum, attaching a “slip notice” identifying any policy changes and outlining their effect on coverage to the renewal policy would have been sufficient to satisfy the insurer’s duty. Id. Ultimately, because the issue of sufficient notice had not been presented to the trial court, the Supreme Court remanded the case for further proceedings, including a new trial. Id. at 14, 26.
Similarly, in McClellan, the defendant had been continually insured by Prudential Property and Casualty Insurance Company of New Jersey (“Prudential”), when Prudential amended the policy upon renewal. McClellan, 376 N.J.Super. at 315. The record before the Appellate Division of the New Jersey Superior Court indicated that Prudential mailed its renewal package containing the new policy to the defendant, along with a standard declaration sheet that stated, “[The] enclosed package reflects the recent change(s) made to the named insured’s Homeowners policy.” Id. at 316 (internal quotations omitted). The Court observed that Prudential “did not specifically notice or highlight the added [terms]” beyond that brief reference in the declaration sheet. Without evidence indicating that Prudential had specifically brought the amendments to the insured’s attention through additional means, the Court found the record incomplete as to whether sufficient notice had been given and remanded the case to the trial court for further discovery. Id. at 317, 322.
Similar issues were presented in Skeete, where the New Jersey Supreme Court affirmed the Appellate Division’s reversal of summary judgment for an insurance company on the basis of insufficient notice. Skeete, 184 N.J. at 9. Prudential, the insurer, had amended its policies upon renewal to reflect significant legislative changes. Id, It subsequently sent two packages of material to the insured, which together constituted a 113-page renewal policy. Id. at 7. One of the packages included “a cover letter advising the insured to read the notices of change and a three-page notice outlining the changes,” along with various other standard forms. Id. Despite the inclusion of the three-page outline and cover letter reference to the policy amendments, the Court nonetheless found the notice “insufficient!,] because of its presentation as part of an essentially undifferentiated passel of two hundred documents.” Id. at 9. The Court went on to state that even though Prudential had provided the insured with notice as to the details of the changes, the placement of such notice remained an important factor. Id. The Court indicated that notice would have been sufficient if Prudential had “sent the cover letter with the three-page notice outlining the changes separately, thus giving the insured a chance to digest the changes before drowning her in a sea of paper] ].” Id. (emphasis added).
The above-cited authorities, while not addressing the unique factual scenario presented by the case at bar, offer guidance as to whether New Jersey law would uphold Netherlands’s and Excelsior’s TCPA Exclusions as properly noticed. Here, the policies’ declarations sheets indicated only that a new exclusion regarding statutoiy violations had been added to the contract.[12] The McClellan decision provides that this, alone, could not have been sufficient to put Precision on notice of the TCPA Exclusions. While Netherlands and Excelsior did offer much more conspicuous and detailed outlines of the TCPA Exclusions within the body of the renewal policies, those packages contained over one hundred pages of information, which placement Skeete held to be insufficient as well. No specific, separate notices were forwarded with the renewal packages, which may have met the minimal Bauman standard. Rather, it appears that Netherlands and Excelsior merely indicated a policy change in a line item of the declaration sheets — without providing any specific information regarding the exclusions — and *719 buried what would otherwise have been an informative notice within the bodies of the renewal policies.
The New Jersey Supreme Court has stated, “Notice allows the consumer to take protective action. It gives the insured the opportunity to guard against the peril of noncoverage, a peril which can arise out of miscommu-nication among brokers, agents, insureds and carriers.” Piermount Iron Works, Inc., 197 N.J. at 441 (internal quotations omitted). See also Bauman, 36 N.J. at 25 (“Absent notification that there have been changes in the restrictions, conditions or limitations of the policy, the insured is justly entitled to assume that they remain the same and that his coverage has not in anywise [sic] been lessened”). Thus, considering New Jersey’s strong policy in favor of protecting insureds from hidden or otherwise inconspicuous changes to their insurance contracts, see Piermount Iron Works, Inc., 197 N.J. at 440, as well as the authorities discussed above, the Court finds that neither Netherlands nor Excelsior provided sufficient notice to Precision regarding the TCPA Exclusions as required by New Jersey public policy and as set forth in the Notice Rule.[13] The exclusions, therefore, were not incorporated into Precision’s 2006-2008 insurance contracts and do not apply here. See Bauman, 36 N.J. at 25 (“[W]here an insurance company purports to issue a policy as a renewed policy without fairly calling the insured’s attention to a reduction in the policy coverage, it remains bound by any greater coverage afforded in [an] earlier policy”).
in. Precision’s Actions Covered by Policies’ Property Damage Provisions
Netherlands and Excelsior each contracted to provide Precision insurance coverage for “occurrences” that result in properly damage. Both policies defined “occurrence” to mean an “accident.” The New Jersey Supreme Court has held that “the accidental nature of an occurrence is determined by analyzing whether the alleged wrongdoer intended or expected to cause an injury. If not, then the resulting injury is ‘accidental,’ even if the act that caused the injury was intentional.”[14] Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 183 (1992). This rule “prevents those who intentionally cause harm from unjustly benefiting from insurance coverage while providing injured victims with the greatest chance of compensation consistent with the need to deter wrong-doing.” Id. Thus, under New Jersey law, when determining whether Precision’s fax campaign was an “occurrence” covered by its insurance policies, the court must focus on the nature of the injury and the subjective intent behind it, rather than on the conduct itself. Terra Nova, 449 Mass. at 413.
The insurers cite Terra Nova in arguing that the fax campaign was not an “occurrence,” because Precision intended to send unsolicited faxes.[15] In TerraNova, the Massachusetts Supreme Judicial Court reviewed an insurance coverage dispute arising out of a fax campaign in violation of the TCPA. Id. at 407. As in this case, New Jersey law applied. Id. at 411. Also like this case, the insured’s policy covered any property damage caused by an- “occurrence,” which was defined as an “accident.” Id. at 408. Citing the standard set forth in Voorhees, the Court examined the insured’s subjective intent and expectations in sending unsolicited advertising faxes to potential customers. Id. at 412-13. In doing so, the Court noted the following factors: (1) the insured knew that the faxes were unsolicited, as the entire purpose of its marketing campaign was to advertise to a new customer base; and (2) the insured faxed the advertisements to approximately 60,000 recipients without any indication as to whether they had given their consent to be contacted. Id. at 413. In considering such undisputed facts, the Court found that the insured necessarily “expected to cause the injury in question — i. e., the transmission of unsolicited facsimile advertisements [ ].” Id at 413-14. It therefore held that the insured’s fax campaign was not an accidental “occurrence” that was covered as property damage under the insurance policy. Id. at 414.
The court agrees with Netherlands and Excelsior that there are substantial similarities between the TerraNova case and the undisputed facts in the present action. Here, Precision purchased the services of a third party with the understanding and intent that advertisements would be faxed on its behalf to new, potential customers. This demonstrates that Precision knowingly sent faxes that were unsolicited per se. However, one significant factor distinguishes the case at bar from the circumstances examined in TerraNova: as found by the federal court, both Rossi and Precision “believed that they had the consent of the fax recipients.” The insured in Terra Nova knew that it was sending advertisements without the recipients’ consent. In contrast, here, the insured parties “did not intend to injure the fax recipients” — i.e., they neither expected nor intended that the unsolicited use of the recipients’ fax machines, toner, and paper would constitute injury, because they believed the faxes were welcome.[16]
Even where the insured’s conduct appears “foolhardy and reckless,” inquiry into the actor’s subjective intent controls under New Jersey law. Voorhees, 128 N.J. at 184. Therefore, under these unique circumstances, and with deference to the factual findings of the federal district court in the Underlying Suit, it cannot be said as a matter of law that Rossi and Precision intended or expected to cause injury in sending the advertising faxes.[17] Thus, the harm caused was accidental, constituting the type of property damage covered under the terms of the Netherlands and Excelsior policies. Lyons v. Hartford Ins. Group, 125 N.J.Super. 239, 245 (App.Div. 1973), cert. denied, 64 N.J. 332 (1974) (‘The general rule [of‘accidental’ ‘occurrences’] is that coverage exists ... for the unintended results of an intentional act, but not for damages assessed because of an injury which was intended to be inflicted”). See also Penn Nat’l Ins. Co. v. Group C Communications, Inc., 2011 N.J.Super. Unpub. LEXIS 2077, *23-26 (App.Div. Aug. *720 1, 2011) (conduct covered as accidental “occunrence” under insurance policy where insured “had a good faith belief that the fax was not unwelcome,” because harm not “expected or intended from its standpoint”). The insurers must indemnify Precision and Rossi in the underlying suit judgment on this basis.
IV. Precision’s Actions Covered by Policies’ Advertising Injury Provisions
Netherlands and Excelsior agreed to insure Precision against “advertising injury liability” resulting from “publication, in any manner, of material that violates a person’s right to privacy.” The insurers assert that liability arising from Precision’s marketing campaign is not covered by the policies because the fax recipients were business entities, which are not “persons” as contemplated in the contract language.[18] Plaintiff argues that the advertising injury provisions are broad enough to encompass both human and commercial “persons,” and therefore covered Precision’s marketing campaign. The Court agrees with Plaintiff.
New Jersey courts interpret insurance policy language according to its plain and ordinary meaning. President v. Jenkins, 180 N.J. 550, 562 (2004). However, if the terms are ambiguous, “they are construed against the insurer and in favor of the insured, in order to give effect to the insured’s reasonable expectations.” Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010). Insurance contract terms are not ambiguous “merely because two conflicting interpretations of it are suggested by the litigants,” Powell v. Alemaz, Inc., 335 N.J.Super. 33, 44 (App.Div. 2000), but only “where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage,” Weedo, 81 N.J. at 247. Here, therefore, the question is “whether, when read in context, a reasonable purchaser of [Netherlands and Excelsior] insurance would believe that the sort of privacy interests protected by the policies overlap with the sort of privacy with which the TCPA is concerned.” St. Paul Fire & Marine Ins. Co. v. Brother Int'l Corp., 319 Fed.Appx. 121, 125 (3rd Cir. 2009) (applying New Jersey law), citing Resource Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 640 (4th Cir. 2005).
In TerraNova, the Massachusetts Supreme Judicial Court examined an insurance contract that purported to cover “advertising injury” arising out of “publication of material that violates a person’s right to privacy.” Terra Nova, 449 Mass. at 414. Finding the provision ambiguous, the Court turned to the standard for interpreting ambiguous insurance policies as explained by the New Jersey Supreme Court:
If the controlling language will support two meanings, one favorable to the insurer and the other favorable to the insured, the interpretation sustaining coverage must be applied. Courts are bound to protect the insured to the full extent that any fair interpretation will allow.
Id. at 417, quoting Mazzilli v. Accident & Cas. Ins. Co., 35 N.J. 1, 7 (1961). Presented with a provision that could fairly be read two different ways, and considering that New Jersey law dictates that if a term’s meaning is “reasonably susceptible to two interpretations, the construction conferring coverage is to be adopted,” Hunt v. Hospital Serv. Plan, 33 N.J. 98, 102 (1960), the Court ultimately construed the advertising injury provision in favor of the insured, holding that it covered liabilities arising from unsolicited faxing in violation of the TCPA. Id. at 417.
Applying this reasoning to the case at bar, the Court finds that the “advertising injury” provision found in Precision’s insurance contracts with Netherlands and Excelsior must be construed against the insurers. While the terms reasonably may be interpreted to apply only to violations of human persons’ rights to privacy, it is equally fair to interpret the terms as covering businesses and corporations as well. See, e.g., Park Univ. Enters., Inc. v. American Cas. Co., 442 F.3d 1239, 1247 n.4 (10th Cir. 2006) (rejecting “out of hand” insurer’s argument that TCPA claim not covered under advertising injury provision where faxrecipient was corporation); Resource Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d at 641 n. 10 (“fair to assume” class in underlying TCPA action included corporations as well as natural persons); Pekin Ins. Co. v. Xdata Solutions, Inc., 958 N.E.2d 397, 403 (Ill.App.Ct. 2011) (“[I]t is clear that the TCPA applies to both individuals and to other entities such as corporations.”). Accord Myron Corp. v. Atlantic Mut. Ins. Corp., 2007 N.J.Super. Unpub. LEXIS 3012, *16 (Law Div. Jan. 22, 2007) (violator of TCPA may be entitled to indemnification under advertising injury insurance provision covering violations of “person’s right to privacy” where recipient was corporation). Therefore, Precision’s fax campaign constituted publication of material that violated the recipients’ rights to privacy, regardless of whether they were humans or businesses, and such conduct was covered as a matter of law by Precision’s insurance policies with Netherlands and Excelsior. The insurers have a duly to indemnify Precision and Rossi in the underlying suit judgment under this provision as well.
V. Insurers Did Not Act in Bad Faith
Insurance companies owe their insureds a duty of good faith in processing claims. Pickett v. Lloyd's (A Syndicate of Underwriting Members), 131 N.J. 457, 467 (1993). Further, Netherlands’s and Excelsior’s contracts with Precision explicitly bound them to defend and indemnify Precision against claims of property damage and advertising injury where covered by their policies. As discussed supra, both the Netherlands and the Excelsior policies covered liability arising out of Precision’s fax marketing campaign. Nonetheless, the insurers’ refusal to defend the underlying suit and indemnify Precision and Rossi was not improper at the time, nor did it constitute bad faith. As the duty to defend and the duty to indemnify are distinct issues under New Jersey law, the court addresses them separately below.
When reviewing whether or not the insurer has a duty to defend an insured, “the complaint should be laid along *721 side the policy and a determination made as to whether, if the allegations are sustained, the insurer will be required to pay the resulting judgment, and in reaching a conclusion, doubts should be resolved in favor of the insured.” Danek v. Hommer, 28 N.J.Super. 68, 77 (App.Div. 1953). “In making that comparison, it is the nature of the claim asserted, rather than the specific details of the incident or the litigation’s possible outcome, that governs the insurer’s obligation.” Flomeifelt, 202 N.J. at 444.
The complaint in the underlying suit accused Precision of sending unsolicited advertising faxes to tens of thousands of recipients nationwide. The TCPA Exclusions in Precision’s insurance contracts with Netherlands and Excelsior denied coverage for property damage and advertising injury “arising directly or indirectly out of any action or omission that violates or is alleged to violate the [TCPA].” The class action brought by Plaintiff against Precision and Rossi explicitly alleged that their marketing campaign violated the TCPA, and the federal court ultimately held as much. The state and common-law claims also asserted in the underlying suit were based on that same conduct. Thus, any liability that Precision and Rossi faced in the underlying suit would have arisen directly out of actions alleged to violate and in actual violation of the TCPA. On a plain reading of the policies’ terms, even if the complaint’s allegations were sustained against the insureds, Netherlands and Rossi would not have been required to pay the judgment. Therefore, at the time the Underlying Suit was tendered to them, a comparison between the complaint and the insurance policies at issue yielded no duty to defend.
Moreover, even though the Court today finds that the insurers have a duty to indemnify Precision and Rossi for the judgment entered against them in the underlying suit, they did not act in bad faith when they first denied coverage in 2010. Under New Jersey law, insurers have the right to disclaim coverage under the terms of their policies. See Griggs v. Bertram, 88 N.J. 347, 355 (1982). In order to prove bad faith in the exercise of that right, an insured must show that “no debatable reasons existed for denial of [coverage].” Pickett, 131 N.J. at 481. This is known as the “fairly debatable” standard. See id. at 473. What’s more, “bad faith ... in denying an insurance claim cannot be established through simple negligence.” Badiali v. New Jersey Mfrs. Ins. Group, 220 N.J. 544, 554 (2015). Rather, the insurer must have demonstrated at least “reckless indifference to the facts or to proofs submitted by the insured.” Pickett, 131 N.J. at 473, quoting Bibeault v. Hanover Ins. Co., 417 A.2d 313, 319 (1980).
Here, Netherlands and Excelsior clearly had fairly debatable reasons for disclaiming coverage under their policies with Precision. Indeed, the fact that the TCPA Exclusions explicitly denied coverage for the exact conduct Precision was accused of in the Underlying Suit is, alone, reasonable basis for the insurers to have denied coverage. See Badiali, 220 N.J. at 560 (no bad faith shown where rational reading of policy language provides valid reason to initially disclaim coverage). Moreover, as discussed supra, reading the “advertising injury” provision as extending liability coverage only to violations of a human person’s privacy rights is a fair interpretation of the terms. Thus, Netherlands and Excelsior could have determined that Precision’s conduct was excepted from coverage based on a reasonable, plain meaning of the policy language.
The insurers could have fairly disclaimed property damage liability coverage as well. At the time the underlying suit was tendered to Netherlands and Excelsior in 2010, it was not clear whether or not Precision and Rossi expected or intended to use the fax recipients’ property without consent. This fact was only determined when found by the federal court in December 2012. In New Jersey, “if there is a factual question as to whether a policy provides coverage which cannot be decided before trial ... an insured must initially assume the costs of defense],] subject to reimbursement by the insurer if the insured prevails on the coverage question.” New Jersey Mfrs. Ins. Co. v. Vizcaino, 392 N.J.Super. 366, 370-71 (App.Div. 2007), quoting Hartford Accident & Indemnity Co. v.Aetna Life & Cas. Ins. Co., 98 N.J. 18, 24 n.3 (1984). Thus, because it was “fairly debatable” at the time whether or not Precision’s fax campaign was covered as an “occurrence” under the policies, and because New Jersey law allows factual determinations to be considered subsequent to denial of coverage without finding bad faith, Plaintiff has not established that the insurers acted in bad faith by initially disclaiming coverage in the underlying suit. See Universal-Rundle Corp. v. Commercial Union Ins. Co., 319 N.J.Super. 223, 249-50 (App.Div. 1999) (no bad faith found where “information in [insurer’s] possession as of the time of its denial letter made [coverage] ‘fairly debatable’ as a matter of law”).
CONCLUSION AND ORDER
For the foregoing reasons, it is hereby ORDERED that:
Defendants Netherlands and Excelsior’s Motion for Summary Judgment is ALLOWED as to Plaintiffs claim of Bad Faith (Count II); and
Defendants Netherlands and Excelsior’s Motion for Summary Judgment is DENIED on Plaintiffs claim that the insurers have a duly to indemnify Precision and Rossi in the underlying suit pursuant to the insurance policies (Count I).

 The TCPA expressly prohibits sending unsolicited fax advertisements. 47 U.S.C. §227(b)(1)(C). Enacted with the purpose of “protect[ing] citizens from the loss of the use of their fax machines during the transmission of fax data,” Palm Beach Golf Center-Boca, Inc. v. Saris, 781 F.3d 1245, 1252 (11th Cir. 2015), the law creates a private right of action and establishes statutory damages for violations thereof, 47 U.S.C. §227(b)(3). The TCPA is a strict liability statute, though treble damages may be awarded if a court finds that a parly acted willingly or with knowledge of the law’s prohibitions. *722 See Park Univ. Enters. v. American Cas. Co. of Reading, 314 F.Sup.2d 1094, 1098 (2004).

 The remaining counts contained in the class action complaint were summarily resolved upon approval of the settlement and are therefore not relevant here.

 The insurers were not parties to the underlying suit, nor were coverage issues litigated in that action.

 Rossi stated in his deposition that Precision’s Heritage insurance broker, Mr. Connelly (first name not provided), met with Precision representatives each year to go over its Netherlands and Excelsior renewal policies. Rossi indicated that there was an understanding that Mr. ConneEy would inform Precision of any material changes to its insurance poEcies at such annual meetings. Rossi further related that neither he nor any other Precision employee remembers either reviewing or being told about the TCPA Exclusions at any time and that he only learned about it upon the commencement of the underlying suit.

 Rossl has indicated that both renewal poEcies constituted hundreds of pages of, generaEy, fine point text. Though the summary judgment record contains only excerpts of each poEcy, the defendant insurers offer no evidence to contradict Rossi’s assertions.

 While the poEcies contained numerous alternative definitions of “advertising injury,” the parties agree that this is the particular provision appEcable to Plaintiffs claim and the Underlying Suit.

 On October 4, 2011, Netherlands and Excelsior filed a suit for declaratory judgment on their obEgations under the insurance poEcies in New Jersey federal district court. The court subsequently dismissed the action for lack of subject matter jurisdiction. The insurers filed a second suit seeking declaration of their duties with the same court on December 8, 2011. That case is stiE pending.

 The insurers have previously moved to dismiss the complaint, for judgment on the pleadings, and for partial summary judgment, aE three of which motions were denied by prior decisions of this court (Fahey, J., Gües, J., and, again, Giles, J., respectively).

 Though the parties debate vehemently whether or not the insurers gave the notice within the specific time frame contemplated by the Notice Rule — less than 120 days and more than 30 days before the premium is due — the court assumes, arguendo, that the renewal poEcies were timely sent.

 New Jersey law does indicate that the insured must be noticed personaEy. See N.J. Admin. Code §ll:l-20.2(c) (notice of changes must be “given to the insured in writing”) (emphasis added); McClellan, 376 N.J.Super. at 315. See also Millbrook Tax Fund, Inc. v. P.L. Henry & Assocs., Inc., 344 N.J.Super. 49, 54 (App.Div. 2001) (where insured not “specificaEy informed” by insurance company of change to poEcy upon renewal, previous poEcy enforced); Nova Dev. Group, Inc. v. J.J. Farber-Lottman Co., Inc., 2010 N.J.Super. Unpub. LEXIS 413 (App.Div. Mar. 1, 2010) (where insurance company provided notice of poEcy amendment to broker only and sent no notice to insured separate from renewal package, new exclusion not incorporated into contract). But cf. NN&R, Inc. v. One Beacon Ins. Group, 2006 U.S. Dist. LEXIS 43109 (D.N.J. 2006) (where insured’s broker — who had been “acting as [insured’s] representative in negotiating and effectuating the insurance contract” and whose assistance as “professional insurance intermediary” was employed “to examine whether coverage had in any way been lessened” — had been informed of poEcy changes, notice considered sufficient even where insured itself was not). Accordingly, if Netherlands and Excelsior did not send the renewal poEcies and corresponding notice to Precision itself, the TCPA Exclusions would likely be automaticaEy invaEd as a matter of law. Yet, as previously noted, the record is unclear on this point. The court therefore addresses the issue by assuming, without finding, that the insurers maEed the 2006-2007 and 2007-2008 renewal poEcies to Precision directly.

 New Jersey courts routinely recognize that declaration sheets play important roles in communicating the parameters of insurance coverage to consumers. See Pizzullo v. New Jersey Mfrs. Ins. Co., 196 N.J. 251, 272 (2008). In stating that the declaration sheet is “the one page most Ekely to be read and understood by the insured,” the Supreme Court has advised insurers to “explore ways to incorporate as much information as may reasonably be included in the declaration sheet.” Zacarias v. Allstate Ins. Co., 168 N.J. 590, 603-04 (2001). Even so, Netherlands and Excelsior, in adding comprehensive TCPA Exclusions to their poEcies, neither referenced them by name nor included any information as to the scope of such exclusions, on the renewal poEcies’ declaration sheets. The court doubts that this constituted a “reasonable” effort to communicate the contract amendments to Precision, considering the emphasis placed on declaration sheets in New Jersey.

 Rossi indicated that he was, in fact, unaware of the TCPA Exclusions until Plaintiff brought the class action suit against Precision. He further testified in his sworn deposition that had he and/or other Precision managers been informed thereof, either through Precision’s broker at Heritage or by written notice from Netherlands or Excelsior, they “certainly would have picked [their] heads up and looked ... a Ettle more carefully” since they were preparing to embark on a fax-focused marketing campaign around that same time.

 Relatedly, Precision’s poEcies with Netherlands and Excelsior specificaEy excluded property damage coverage if Precision “expected or intended” the aEeged injury.

 Netherlands and Excelsior present an alternative argument that the Court may dispose of summarily. The poEcies provide that properly damage EabiEiy coverage does not extend to situations wherein the property aflegedly damaged was in the “care, custody, or control” of the insured at the time of the occurrence. The insurers assert that Precision “controEed” recipients’ fax machines, toner, and paper at the time the advertisements were sent and that such conduct is therefore not covered under the poEcy- The court finds this argument specious, if creative, and finds it is not a reasonable interpretation of the insurance contracts as written. See Flomefelt v. Cardiello, 202 N.J. 432, 441 (2010) (“An insurance poEcy is a contract that wiE be enforced as written when its terms are clear in order that the expectations of the parties wiE be fulfiEed”).

 Rossi related in his deposition that he beEeved the contacts were interested in learning more about Precision’s business at the time the faxes were sent. He further testified that Precision’s understanding of the marketing campaign was that the consultant would filter a generic mailing Est of tens of thousands of potential contacts down to “a couple thousand” pre-qualified, “interested” entities and individuals to whom the advertisements would then be faxed. He further stated that he “never expected 31,000 faxes to go out [ ].”

 The Court further notes that, pursuant to New Jersey law, insurers have the burden of bringing a case within a poEcy exclusion or proving the case outside of the coverage provisions. Flomerfelt, 202 N.J. at 442. Netherlands and Excelsior have not provided evidence sufficient to meet this burden.

 Netherlands and Excelsior alternatively argue that the insureds sent unsoEcited faxes “with the knowledge that the act would violate the rights of another,” because common sense dictates that the sending of any fax disrupts the privacy of the recipient. This argument fails as the federal court expEcitly found that Precision and Rossi “did not intend to injure the fax recipients” and because they beEeved the faxes to be both legal and welcome, as discussed supra